UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TERRY L. WILLIAMS

                    Plaintiff

        v.

CITY OF BOSTON;OFFICER JOHN BOYLE;
in his individual capacity;
OFFICER WILLIAM KELLEY,in his
individual capacity,JOHN DOES
1 through 20

                    Defendants

FILED
IN CLERKS OFFICE

2010 JAN 25 P 1:39

C.A. No.
U.S. DISTRICT COURT
DISTRICT OF MASS.

10 CA 10131 PBS

COMPLAINT
AND
JURY DEMAND

MAGISTRATE JUDGE _____

INTRODUCTION

1.     Plaintiff TERRY L. WILLIAMS was wrongfully imprisoned
for more than five years, between pretrial detention, house of
correction, and state penitentiary due to a parole detainer
that was lodged against Mr. WILLIAMS and due to his provisional
parole revocation as a direct result of being falsely arrested
and wrongfully convicted for the alleged assault and battery
charge which Mr. WILLIAMS did not commit. On October 28,2005,
the Massachusetts Appeal Court reversed Mr. WILLIAMS' assault
and battery conviction. The Massachusetts Appeals Court cited:
"Without the heasay evidence, the Commonwealth's case rested
upon the fact that the officers were responding to a 911 call
regarding a fight between a male and a female"..."[W]e are unable
to conclude that [the] inadmissible testimony did not have a
material influence upon the jury's verdict.", 65 Mass. App. Ct. 9
(October 28,2005). On November 28,2005, the rescript was issued
to Brighton District Court and thereafter, the prosecution had
one year to retry the assault and battery charge against Mr.

WILLIAMS. The prosecution had from November 28,2005 until
November 28,2006, to retry Mr. WILLIAMS for the assault and
battery charge which the prosecution failed to do by November
28,2006. On May 23,2007, Mr. WILLIAMS' appointed counsel filed
a motion to dismiss with prejudice, which was allowed by the
Brigton District Court Judge.

2.    Mr. WILLIAMS' ordeal was more than a tragic mistake, but
the result of concerted tortious and unconstitutional acts by
police officers and supervisors, all working on behalf of the
BRIGHTON POLICE DEPARTMENT AREA K-14, as well as CITY OF BOSTON'S
municipal policies, customs and practices that were deliberately
indifferent to the constitutional rights of citizens such as
TERRY L. WILLIAMS. Despite Mr. WILLIAMS' innonce, and utter lack
of evidence against Mr. WILLIAMS, at each step of the criminal
process, the police defendants JOHN BOYLE and WILLIAM KELLEY used
unconstitutional investigative technques and unlawful actions
without legal justification caused Mr. WILLIAMS' false arrest,
malicious prosecution, unfair trial, wrongful conviction, lenthy
imprisonment and right to be free from incarceration due to Mr.
WILLIAMS' parole being provisionally revoked as result of the
false arrest and wrongful conviction.

3.    Acting under the color of state law, police defendants
gave false testimony under oath in a court of law to continue
this malicious prosecution against Mr. WILLIAMS by giving
testimony to the prosecution's Motion In Limine To Spontaneous
Utterances with the deliberate purpose of preventing the false
charges from being dropped/or dismissed with prejudice against

Mr. WILLIAMS. And, then further continued the malicious prosecution against Mr. WILLIAMS  by appearing at his trial on March 5,2003, to testify against Mr. WILLIAMS, without the presence of an alleged victim at trial to testify against Mr. WILLIAMS. Police defendants JOHN BOYLE and WILLIAM KELLEY act under the color of state law on the day of Mr. WILLIAMS' trial.

4.     As a direct result of the police defendants' intentional, willful, wanton, reckless, deliberately indifferent, and/or bad faith acts and omissions, TERRY L. WILLIAMS sustained injuries; and damages, including, among others, the following: personal injuries; pain and suffering; sever mental anguish; emotional distress/ loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment degradation; injury to reputation; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations and the right to live in the community on parole without being falsely accused of committing crimes.

5.     Beyond compensating TERRY L. WILLIAMS for the years stolen from Mr. WILLIAMS and for his continuing injuries, this action seeks to redress the unlawful municipal policies and practices pursuant to which the police defendants and John Does acted under color of law, violated TERRY L. WILLIAMS' clearly established rights as guaranteed by the First, Fifth, Sixth, Ninth, Fourteenth Amendments to the United States Constitution.

JURISDICTION

1.      Title 28 U.S.C. § 1331 provides federal question jurisdiction, and 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law claims.

VENUE

1.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts, eastern    , the judicial district in which the claim arose and in which, upon information and belief, all defendants reside or conduct business.

PARTIES

1.      Plaintiff, TERRY L. WILLIAMS is an individual residing in 2 Clark Street/Box 43 Norfolk Massachusetts 02056. Mr. WILLIAMS tried and wrongfully convicted as a direct result of false testimonies that had been given at trial by defendant police officers.

2.      Defendant CITY OF BOSTON (BOSTON CITY HALL) Boston Massachusetts 02201, is duly organized municipal corporation and public employer under the laws of the Commonwealth of Massachusetts. At all times relevant to this action, the BRIGHTON POLICE DEPARTMENT AREA K-14 was a department within the CITY OF BOSTON.

3.      At all times relevant to this action, defendant OFFICER JOHN BOYLE was an individual employed by the CITY OF BOSTON at the BRIGHTON POLICE DEPARTMENT AREA K-14, 301 Washington Street Brighton Massachusetts 02135. Defendant JOHN BOYLE is named here in his individual capacity for actions taken in the scope of his employment and under color of state law.

4.     At all times relevant to this action, defendant
OFFICER WILLIAM KELLEY was an individual employed by CITY OF
BOSTON at the BRIGHTON POLICE DEPARTMENT AREA K-14, 301
Washington Street Brighton Massachusetts. Defendant WILLIAM
KELLEY is named here in his individual capacity for actions taken
in the scope of his employment and under color of state law.

5.     Defendants JOHN DOES 1 through 20, whose identities are
currently unknown, represent those employees of the BRIGHTON
POLICE DEPARTMENT AREA K-14 who supervised defendants OFFICER
JOHN BOYLE and WILLIAM KELLEY and had personal involvement in
the investigation of PLAINTIFF TERRY L. WILLIAMS.

## JURY TRIAL DEMAND

1.     Plaintiff hereby demand a trial by jury on all issues
so triable.

## FACTS

## THE ARREST

1.     On February 9,2002, the police dispatcher from the
Brighton Police Department AREA K-14 dispatched two 911 calls
made from the apartment building located on 1431 Commonwealth
Avenue, to police unit K101A to respond to the two 911 calls, that
was the defendants police car number,K101A.  One of the 911 calls
was a domestic violence call and the other 911 call from
apartment six was not a domestic call. Defendant police officers
only investigated one of the 911 calls and they did not investigate
the domestic violence 911 call. They only went to apartment six.

5

2.    Defendant police officers JOHN BOYE and WILLIAM KELLEY
were the first two police officers to arrive on the scene at
1431 Commonwealth Avenue, apartment building to allegedly
investigate the two 911 calls that were made from that apartment
building. Defendant police officers arrived on scene in parole
car K101A, and two 911 calls were dispatched to that patrol car.

3.    On February 9,2002, the dispatch report did not indicate
that a female from apartment six reported a stabbing and nor did
any one from apartment six report a domestic violence fight
between a male and female.

4.    Upon entering the apartment building, the defendant police
offices noticed TERRY L. WILLIAMS in the hallway. Defendant
police officers JOHN BOYLE and WILLIAM KELLEY approached Mr.
WILLIAMS to question him.

5.    Defendant police officer JOHN BOYLE had asked Mr. WILLIAMS
what happened, and Mr. WILLIAMS replied nothing happened. Then,
defendant police JOHN BOYLE informed Mr. WILLIAMS that he had
received a 911 call for a man and a woman fighting. But, defendant
police officer did not mention which apartment that 911 call was
made from.

        TERRY L. WILLIAMS told defendant police officers JOHN
BOYLE and WILLIAM KELLEY that he did not have a fight with a
woman, but that he did have an argument with the lady in
apartment six. Mr. WILLIAMS told defendant police officers
JOHN BOYLE and WILLIAM KELLEY that he did not hit the lady that
he had an argument with in apartment six. Mr. WILLIAMS told
defendant police offices that the lady he had argued with had hit
him with a vase but, he did not want to press charges because lady
got a little carried away.

6

7.     After Mr. WILLIAMS had given his brief statement, defendant police officer JOHN BOYLE asked Mr.WILLIAMS if he was on probation or parole. And, Mr. WILLIAMS had asked what did that question have to do with this situation. But, defendant police officer JOHN BOYLE was more concerned about knowing if Mr. WILLIAMS was on probation or parole than he was in the investigation of the two 911 calls that were dispatched to him to respond to.

8.     Because of defendant police officer JOHN BOYLE'S insistence to know, Mr WILLIAMS told defendant JOHN BOYLE that he was on parole, and defendant JOHN BOYLE want to know the exact offense Mr. WILLIAMS was on parole for. And, Mr. WILLIAMS again, that his being on parole did not have any thing to do with the current situation. But, again, defendant JOHN BOYLE insisted that Mr. WILLIAMS tell him what offense was he on parole for.  Mr. WILLIAMS told defendant police officers JOHN BOYLE and WILLIAM KELLEY that he was on parole from a second degree murder sentence. Once Mr. WILLIAMS had answered defendant JOHN BOYLE's question concerning his parole status, defendant JOHN BOYLE did not say another word to Mr. WILLIAMS but, he immediately, began walking up the stairs by himself. While defendant JOHN BOYLE was up stairs, defendant police officer WILLIAM KELLEY did not talk to Mr. WILLIAMS at all.

9.     While defendant JOHN BOYLE was up stairs, two other police officer from the Brighton Police Department entered the apartment building, while Mr. WILLIAMS stood down stairs in the hallway with defendant police officer WILLIAM KELLEY.

10.    When defendant JOHN BOYLE had completed his alleged

investigation up stairs at apartment six. Defendant JOHN BOYLE

returned back down stairs where defendant WILLIAM KELLEY and

to other Brighton Police Officers were waiting for him to return

back down stairs, with Mr. WILLIAMS still waiting, also, and

Mr. WILLIAMS was not hand cuffed when defendant JOHN BOYLE returned.

11.    As defendant JOHN BOYLE was walking back down the stairs,

he told defendant WILLIAM KELLEY to place Mr. WILLIAMS under arrest.

Mr. WILLIAMS asked why he was being arrested because he did not

commit a crime against any one.

12.    Defendant JOHN BOYLE falsely stated that "The woman up stairs

said you stabbed her". Mr. WILLIAMS asked defendant JOHN BOYLE

why he did not bring the woman down stairs with him to accuse

and identify him.  Defendant JOHN BOYLE did not say another word

in front of the other Brighton Police Officers. Defendant JOHN

BOYLE just simply finished walking donwn the stair and he continued

walking straight out of the apartment building, and defendant

WILLIAM KELLEY departed with defendant JOHN BOYLE. Mr. WILLIAMS

was not placed in hand cuffs when the defendant police officers

left the apartment building but, Mr. WILLIAMS was still under

arrest and in custody of the other two Brighton Police Officers.

13.    One of the Brighton Police Officers asked Mr. WILLIAMS if

some one up stairs had really been stabbed. Mr. WILLIAMS told him

that no one had been stabbed up stairs. But, neither one of the

two police officers went up stairs to apartment six nor to any

other apartment to investigate the allegation of defendant JOHN

BOYLE. Instead, Mr. WILLIAMS had been hand cuffed, and told he

would be ok when he go to court. Mr. WILLIAMS told the police

officers that he could not be arrested for a violent crime.

14.     On the day that Mr. Williams was arrested and being
and booked, defendant police officer John Boyle notified Mr.
Williams' parole officer to tell his parole officer that Mr.
Williams had been arrested for stabbing a female, even though he
did not have any evidence to show that Mr. Williams committed
a crime.  And, defendant police officer John Boyle fabricated
the information in his police report against Mr. Williams.

15.     Mr. Williams' parole officer lodged a parole detainer
against him because defendant police officer John Boyle told
the parole officer that Mr. Williams was arrested for stabbing
a female.

## THE ARRAIGNMENT

1.     On February 11,2002, Mr. Williams was transported to
Brighton District Court to be arraigned on false charges.
Mr. Williams was arraigned for three false charges; B&E/NIGHT
TIME FOR FELONY c.266 § 16, A&B WITH DANGEROUS WEAPON G.L. C.
265 § 15A(b) and A&B G.L c. 265 § 13A.

2.     Defendant police officers John Boyle and Williams Kelley
did not appear in Brighton District Court for Mr. Williams'
arraignment on February 11,2002, to verify the charges they had
placed on Mr. Williams.

3.     No female appeared at Mr. Williams' arraignment from
apartment six to allege that Mr. Williams had allegedly stabbed her.
And the prosecution was not provided with any evidence to show
that Mr. Williams committed any crimes. Prosecution was not
provided with any written statements nor tape recorded statement
from an alleged female stab victim and there were no pictures taken.

HEARING ON MOTION IN LIMINE
FOR SPONTANEOUS UTTERANCES
BEFORE TRIAL BEGAN

1.      After Mr. WILLIAMS had been arraigned, on February 11,2002,
there were no other significant court actions that had occurred
in Mr. WILLIAMS' criminal case until the day of Mr. WILLIAMS'S
trial, which had first been scheduled to began on July 31,2002.

2.      On July 31,2002, defendant police officer WILLIAM KELLEY
was the only defendant police officer who had appeared in court
since Mr.WILLIAMS had been arraigned, back on February 11,2002.
Defendant police officer JOHN BOYLE did not appear in court against
Mr. WILLIAMS on July 31,2002.

3.      Before prosecution could move forward for trial against
Mr. WILLIAMS, the prosecution needed defendant police officer
WILLIAM KELLEY to give false testimony in the Motion Hearing For
Spontaneous Utterances, which defendant police office WILLIAM
KELLEY did do, and the judge did allow the prosecution's Motion
For Spontaneous Utterances based on the false testimony of
defendant police officer WILLIAM KELLEY, on July 31,2002.

FABRICATION OF INCULPATORY EVIDENCE

1.      Defendant police officer JOHN BOYLE falsely reported in
his police incident report that he had went up stairs to
apartment six and spoke with the victim who ststed that she and
her friend were trying to leave the apartment and the suspect

10

wouldn't let them, then suspect threw the victim down into the
kitchen and while they were fighting the suspect stabbed the
victim in the hand with a kitchen knife. The victim then told
officer Boyle that the suspect left the apartment  after the
fight for a few minutes but tried to return . The victim and the
witness refused to let him back in. The suspect was placed
under arrest for assault and battery with a dangerous weapon,
assault and battery(209A), breaking and entering nighttime.

2.      Defendant police officer JOHN BOYLE stated in his police
incident report that he took a knife from the scene.

3.      On July 31,2002, trial day, defendant police officer
WILLIAM KELLEY fabricated false testimonial evidence under oath
on the prosecution's Motion to admit Excited Utterances through
him. The trial judge allowed defendant WILLIAM KELLEY to use the
false statements against Mr. WILLIAMS at his trial, which was
continued to March 5, 2003, due to defendant JOHN BOYLE not
appearing for trial on July 31,2002.  In addition, defendant
WILLIAM KELLEY gave false evidence at trial on March 5,or 6 of
2003, that he had taking pictures of the alleged victim without
producing this alleged evidence at trial.

## FAILURE TO INVESTIGATE

1.      The dispatch report indicated that there were two 911 calls
made from two different apartments, in the apartment building
located on 1431 Commonwealth Avenue. Defendant JOHN BOYLE only
responded to one of the 911 calls that were made to that apartment
building. Defendant police officers failed to investigate a
second 911 call in that same apartment building at any other time.

11

2.     Defendant JOHN BOYLE failed to mention in his police incident report that he did not investigate the second 911 call that was made to the apartment building located on 1431 Commonwealth Avenue even though, he knew that two 911 calls were made from that location.

3.     Although the defendant police officers alleged that they did investigate. They had failed to produce tangible proof for the prosecution that an actual crime had taken place in apartment six. There had been no written and nor tape recorded statements taken from an alleged victim and witness, and there had been no pictures taken of any alleged stab wounds and bruises.

4.     Defendant police officer WILLIAM KELLEY falsely testified that he and defendant JOHN BOYLE went back up to apartment six to do some further investigation by interviewing the alleged victim and witness again. The defendants' alleged second investigation did not produce any material evidence to show that and prove that a crime actually had taken place in apartment six, by Mr. WILLIAMS. As a direct result of defendant WILLIAM KELLEY's false testimony on July 31,2002. Mr WILLIAMS was forced to go to trial because the trial judge allowed the motion for excited utterances based on the defendant WILLIAM KELLEY's testimony.

### TRIAL AND CONVICTION

1.     On March 5,2003, trial day, Mr. WILLIAIMS had properly informed the trial judge before his trial had started that he had a Six Amendment Right to confront his accusers. But, the trial judge told Mr WILLIAMS that he was confronting his witnesses, which were the police officers, JOHN BOYLE and WILLIIAM KELLEY.

12

2.    At trial, the prosecution's strongest evidence against Mr. WILLIAMS were those false hearsay testimonies of the defendant police officers, JOHN BOYLE and WILLIAM KELLEY.

3.    The prosection noted at sidebar conference on the first day of trial that his entire case, against Mr. WILLIAMS, rested on hearsay evidence, as articulated by the prosecution's own statement "Well my whole case is heasay.", Tr. II/147.

4.    Mr. WILLIAMS represented himself with stand-by counsel and he testified on his own behalf.

5.    On March 6,2003, as a direct result of the false testimonies of the defendant police officers JOHN BOYLE and WILLIAM KELLEY. Mr. WILLIAMS had been found guilty by a jury of the assault and battery charge. And, the trial judge sentence Mr. WILLIAMS to the recommended maximum of two and one half years to serve at South Bay House of Correction. Mr. Williams filed a timely notice of appeal.

## DIRECT APPELLATE REVIEW

1.    Mr. WILLIAMS had completed serving his two and one half year sentence before he had an opportunity to appeal his conviction while he had served his time at South Bay House of Correction. On May 11,2004, Mr. WILLIAMS had completed his two and one half year sentence.

2.    Mr. Williams had a parole detainer lodged against him the whole entire time that he was serving his time at South Bay House of correction. Once Mr. WILLIAMS completed his sentence, the parole detainer lodged against Mr. WILLIAMS did not allow him to be released back into the community. On May 11,2004, because

13

of the parole detainer that was lodged against Mr. WILLIAMS
back on February 9,2002, due to defendant JOHN BOYLE contacting
Mr. WILLIAMS' parole officer and giving his parole officer
false information that Mr. WILLIAMS had committed violent offenses,
Mr. WILLIAMS had to be transferred back to the state penitentiary,
M.C.I. Concord Classification Center, in Concord Massachusetts,
to to face the Massachusetts Parole Board for a possible
parole revocation hearing.

3.      In the Summer of 2004, while Mr. WILLIAMS was still in
M.C.I. Concord, he received his first attorney-client visit
from his appellate counsel for his assault and battery conviction.

4.      On June 21,2004, two members of the Massachusetts Parole
Board came to M.C.I. Concord and held a revocation hearing with
Mr. WILLIAMS, in connection with his new arrest on February 9,
2002. Mr. WILLIAMS' parole was provisionally revoked and he was
referred to the FULL PAROLE BOARD for a possible final parole
revocation hearing, which had been schede for September 7,2004.

5.      On August 24,2004, a hearing examiner from the
Massachusetts Parole Board came to M.C.I. Concord to interview
Mr. WILLIAMS for his upcoming parole revocation hearing.

6.      The hearing examiner told Mr. WILLIAMS that his chances
of being re-parole at this time was not good because he had
received a guilty verdict on the assault and battery charge.

7.      Mr. WILLIAMS had explained to the hearing examiner that
he was not guilty of committing any of the three violent charges
that were falsely placed on him by two Brighton Police Officers.

8.     Mr. WILLIAMS had informed the hearing examiner that he was contesting his assault and battery conviction on appeal and that he could prove his innocence.

9.     The hearing examiner had advised Mr. WILLIAMS to postpone his parole revocation hearing if he thought that he could prove his innocence. The examiner stated that Mr. WILLIAMS did not have to take the advice of the hearing examiner but, it would be in the best interest of Mr. WILLIAMS to postpone his September 7,2004, parole revocation hearing.

10.     Mr. WILLIAMS agreed with the advice of the hearing examiner and signed a formal agreement, with the Parole Board's consent, to postpone his final parole revocation hearing until he has resolve his legal matter on appeal, the assault and battery conviction.

11.     The Massachusetts Appeals Court argued Mr. WILLIAMS' assault and battery conviction on March 16,2005. And on October 28,2005, the Massachusetts Appeals Court reversed Mr. WILLIAMS' assault and battery conviction. The Massachusetts Appeals Court stated in part: "Without the heasay evidence, the Commonwealth's case rested upon the fact that the officers were responding to a 911 call regarding a fight between a male and a female...' and the COURT further stated: "We are unable to conclude that the inadmissible testimony did not have a material influence upon the jury's verdict". [Commonwealth v. Williams 65 Mass. App. Ct. 9].

12.     The Commonwealth did not seek further appellate review and the rescript had been issued to Brighton District Court on November 28,2005.

## COMMONWEALTH FAILURE TO SEEK RETRIAL
## OF ASSAULT AND BATTERY CHARGE

1.    The prosecution had one year to retry the assault and battery charge against Mr. WILLIAMS but failed to so for want of prosecution.

2.    From November 28,2006, the prosecution failed to inform Mr. WILLIAMS that the prosecution would not seek a retrial of the assault and battery charge against him.

3.    After one year had passed, from November 28,2005 until November 28,2006, Mr. WILLIAMS had to take the initiative to move the COURT for a dismissal of the assault and battery charge against him. Mr. WILLIAMS filed two motions to dismiss with prejudice. The first motion was file in December of 2006 and, the second motion was filed in January 2007, both motions were filed to no avail.

4.    Mr. WILLIAMS sought the assistance of public counsel to represent him on his motion to dismiss the assault and battery charge, and he was appointed public counsel. Because Mr. WILLIAMS' two motions to dismiss were being ignored.

5.    On May 23,2007, counsel' Motion to dismiss with prejudice was allowed, and Mr. WILLIAMS was freed from the stress and anguish of this malicious prosecution. Mr. WILLIAMS suffered for over five year to resolve and free himself from this malicious prosecution which took place without legal jusification, from February 9,2002 until May 23,2007.

6.    Because of the defendants' deliberate actions against Mr. WILLIAMS. Now, he has to cope with the stress of a parole revocation hearing due to this unjustified malicious prosection.

16

## NOTICE OF CLAIM

1.    Plaintiff notified the CITY OF BOSTON of his state law
cause of action pursuant to Mass. G.L. c.258 § 4 on
December 21,2006, and an amended notice of claim was received by
the CITY OF BOSTON on December 28,2007. A copy of said notice is
attached as Exhibit 1.  Six months have passed, and the CITY OF
BOSTON has not responded or made any offer of settlement.

## FEDERAL CAUSE OF ACTION

### COUNT I:
42 U.S.C. § 1983 CLAIM FOR CONDUCTING IMPROPER
INVESTIGATIVE PROCEDURES AT THE APARTMENT BUILDING
LOCATED ON 1431 COMMONWEALTH AVENUE WHICH LEAD TO
THE UNLAWFUL ARREST OF TERRY L. WILLIAMS
IN VIOLATION OF THE FOURTEENTH AMENDMENT

AGAINST ALL INDIVIDUAL POLICE DEFENDANTS AND JOHN DOES

1.    All of the foregoing is hereby incorporated by reference
and realleged as if set forth herein.

2.    The individual police defendants: JOHN BOYLE, WILLIAM KELLEY
and JOHN DOES conducted a improper investigation at the apartment
building located on 1431 Commonwealth Avenue, on February 9,2002,
including without limitation:

> A.    Conducting interview with only the alleged victim
>       and witness, without the presence of Mr. WILLIAMS;

> B.    Conducted arrest procedure on Mr. WILLIAMS, without
>       bring the alleged stab victim down stair to identify
>       Mr. WILLIAMS as the person who did the stabbing.

> C.    After defendant police officer JOHN BOYLE conducted
>       his investigation in apartment six. He told Mr.

WILLIAMS he was under arrest because the female
up stairs said that he had stabbed her.
And defendant police officer WILLIAM KELLEY did not
question the way his partner improperly conducted
the investigation that lead to Mr. WILLIAMS unlawful
arrest.

D.   The focus of the investigation was unduly conducted
only on one of the 911 calls that were made from the
apartment building located on 1431 Commonwealth Avenue
on February 9,2002, when there were two 911 calls made
from that apartment building, from two separate
apartment.

1.   The defendant police officers conducted these improper
investigative acts intentionally and with deliberate indifference
to Mr. WILLIAMS' clearly established constitutional rights. No
reasonable police officer would have conducted an improper
investigation and believed that the procedures taken against
Mr. WILLIAMS were reliable or, would produce a lawful arrest.

2.   As a direct and proximate cause of these improper
investigative procedures, failure to being alleged stab victim
down stairs to identify Mr. WILLIAMS before placing  Mr. WILLIAMS
under arrest, in violation of his Fourteenth Amendment right to
a fair trial and to not be deprived of liberty without due
process of law. Due to defendants' malicious misconduct, TERRY L.
WILLIAMS suffered loss of freem on parole, years of imprisonment,
it took over five years to resolve this criminal matter in his
favor, and endured all of the other physical, emotional and
pecuniary damages set forth above.

COUNT II:
42 U.S.C. § 1983 CLAIM FOR FALSE
ARREST AND MALICIOUS PROSECUTION
IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS

1. AGAINST ALL INDIVIDUAL POLICE DEFENDANTS AND JOHN DOES    Aii
of the foregoing is hereby incorporated by reference and
realleged as if set forth herein.

2.    When TERRY L. WILLIAMS was arrested at the apartment
building located on 1431 Commonwealth Avenue, there was no
probable cause to believe Mr. WILLIAMS had committed a crime.
Police defendant were aware that there were two 911 calls made
from the apartment building located on 1431 Commonwealth Avenue
from two differnt apartments within the same building. Only
one of the two 911 calls was actually investigated, and that
was the 911 call that was made from apartment six, where no one
in that apartment did not report a domestic violence call.
Police defendants failed to investigate the whereabouts of the
second 911 call which was the acual 911 call reporting a man
and a woman fighting which was never investigated.  When TERRY L.
WILLIAMS was handcuffed and booked for assault and battery with a
dangerous weapon, assault and battery, and breaking and entering
charges. The only evidence against Mr. WILLIAMS was the false
hearsay accusation  of defendant police  officer JOHN BOYLE,
who had stated: "The woman up stairs said you stabbed her".
But, an actual victim was never produced to confirm defendant
JOHN BOYLE's false accusation against Mr. WILLIAMS. There existed
no probable cause to arrest Mr. WILLIAMS' on February 9,2002.

3.     Acting under color of state law, and with malice, the
individual police defendants JOHN BOYLE and WILLIAM KELLEY
commenced or cause to be commenced a prosecution against
TERRY L. WILLIAMS by arresting Mr. WILLIAMS without probable
cause on February 9,2002, and continued the prosecution by filing
a false police incident report, cause a false complaint to be
filed with the court clerk on February 11,2002, gave false
testimony at Hearing for Spontaneous Utterances, on trial day,
on July 31,2002, which was continued, and finally, testified
falsely at trial which was held on March 5th and 6th of 2003
even though, no alleged female, stabbing victim did not appear
in court to confirm the false charges against Mr. WILLIAMS
at trial. The prosecution ultimately terminated in favor of Mr.
WILLIAMS on May 23,2007. Mr. WILLIAMS' attorney filed a motion
to dismiss with prejudice, without opposition from the prosecution.

4.     As a direct and proximate result of defendants' malicious
acts, TERRY L. WILLIAMS was falsely arrested, unjustly tried, and
wrongfully convicted, imprisonment, loss freedom from being on
parole, and endured all of the other physical, emotional and
pecuniary damages set forth above.

COUNT III:

42 U.S.C. § 1983 CLAIM FOR FABRICATION OF EVIDENCE
IN VIOLATION OF THE FOURTEENTH AMENDMENT
AGAINST JOHN BOYLE AND WILLIAM KELLEY

1.     All of the foregoing is hereby incorporated by reference
and realleged as if set forth herein.

2.     Acting under colr of state law, defendant JOHN BOYLE
intentionally, or with reckless disregard for the truth, fabricated
falsely, incupatory police incident report that was used

20

against TERRY L. WILLIAMS in support of a charge, and used it
against his parole by having a parole detainer lodged against
him after defendant JOHN BOYLE had notified Mr. WILLIAMS'
parole officer on February 9,2002, and he used the false police
incident report at his trial, thereby violating TERRY L.
WILLIAMS' clearly established rights under the Fourteenth
Amendment.

3.    For example, in JOHN BOYLE'S police incident report of
February 9,2002, he falsely reported that TERRY L. WILLIAMS
prevented the female and her friend from leaving the apartment
and wouldn't let them leave, then threw the victim down into the
kitchen and then while they were fighting the suspect stabbed
the victim in the hand with a kitchen knife. Parole officer was
notified The knife was taken from the scene but taken out of the
sink along with pictures of the glass door the suspect broke.

4.    Acting under color law, defendant WILLIAM KELLEY
intentionally, or with reckless disregard for the truth, fabricated
falsely inculpatory testimony (which primarily caused Mr.
WILLIAMS to be forced to go to trial) at the motion hearing for
excited utterances. As a direct result of defendant WILLIAM
KELLEY'S fabricated testimony, the trial judge allowed the
motion  for excited utterances, which permitted the malicious
prosecution to continue against Mr. WILLIAMS.

5.    For example, at the Motion Hearing defendant WILLIAM
Kelley testified to thing he did not do. He had stated under oath
that he went up stairs, during a second interview, to apartment
six to take an alleged female about what happened to her. He

also, stated that TERRY L. WILLIAMS hit the female and that she had red marks around her neck. He stated she was upset and aggravated and that she had a cut on her hand.

6.     As a direct and proximate result of defendants' malicious acts, TERRY L. WILLIAMS suffered an unfar trial, a wrongful conviction, years of imprisonment, spent over five years to resolve this criminal prosecution in a favorable manner, and loss parole privilege as direct result of being convicted, and endured all of the other physical, emotional and pecuniary damage set forth above.

COUNT IV:
42 U.S.C. § 1983 CLAIM FOR CONSPIRACY
TO VIOLATE CONSTITUTIONAL RIGHTS
AGAINST ALL INDIVIDUAL POLICE DEFENDANTS

1.     All of the foregoing is hereby incorporated by reference and realleged as if set forth herein.

2.     Defendants conspired, reached a mutual understanding and acted in concert to violate TERRY L. WILLIAMS' constitutional rights.

3.     In furtherance of the conspiracy, defendants undertook overt acts, including without limitation the following:

  A.     Faled to investigate second 911 call when they had known that two 911 calls were made from 1431 Commonwealth Avenue;

  B.     Failed to bring alleged victim down stairs to make a formal identification of TERRY L. WILLIAMS before placing him under arrest.

  C.     Failed to collect written statements from alleged victim and alleged witness

22

D.   Failed to take pictures of the alleged victim's
     injuries allegedly caused by a knife and being
     allegedly hit by Mr. WILLIAMS;

F.   Defendant police officer WILLIAM KELLEY lied
     under oath that he may have taken pictures of
     the alleged victim and victim's bruises;

G.   Testified that he got a camera from duty supervisor's
     locker. This was defendant WILLIAM KELLEL'S
     testimony at trial;

H.   Defendant WILLIAM KELLEY falsely testified that
     he went straight back up stairs to interview the
     alleged victim with his partner defendant JOHN BOYLE;

I.   Defendant JOHN BOYLE testified that defendant
     WILLIAM KELLEY went back to the police station to
     get a camera to take pictures by himself while
     he stayed at the police station to write the police
     incident report;

J.   Defendant police JOHN BOYLE testified that defendant
     police WILLIAM KELLEY did not take pictures of an
     alleged victim, but just a picture of a widow. And,
     He testified that he did not see any pictures;

K.   On July 31,2002, it was defendant WILLIAM KELLEY'S
     false testimony that saved the case against Mr.
     WILLIAMS from being dismissed at the Motion Hearing
     for admittance of excited utterances, which was
     allowed, so that the defendant police officers
     could come back on March 5, 2003, to testify at trial.

23

L.   Both defendant police officers agreed to appear
at Mr. WILLIAMS' trial, on March 5,2003 and on
March 6,2003, to give false testimony against
Mr. WILLIAMS, even though they knew that no victim
had not accused Mr. WILLIAMS of committing no crime,
and that they did not have any demonstrative
evidence that would prove that Mr. WILLIAMS had
committed a crime against some one, other than their
false testimonial evidence, which caused Mr.
WILLIAMS to be wrongfully found guilty based on their
false testimony and be wrongfully convicted.

1.   Defendants' conspiracy directly caused the constitutional
deprivations suffered by TERRY L. WILLIAMS, including his false
arrest, malicious prosecution, unfair trial, wrongful conviction,
and unlawful confinement, loss of freem on parole status, loss
of income, and all other grievous permanent damages and injuries
set forth above.

COUNT V: 42 § 1983 SUPERVISORY LIABILITY
AGAINST JOHN DOES 1 THROUGH 20

1.   All of the foregoing is hereby incorporated by reference
and alleged as if set forth herein.

2.   The false arrest, malicious prosecution, unfair trial,
wrongful conviction, and prolonged confinement, loss of parole,
was caused by JOHN DOES 1 through 20, supervisors of the CITY
OF BOSTON police department, acting in their individual capacities,
who, with deliberate indifference to the rights of criminal
suspects, failed adequately to train and/or supervise defendants
JOHN BOYLE and WILLIAM KELLEY in proper investigation techniques,

24

identification procedures, and documentation and disclosure
of evidence to prosecutors. In so doing, the supervisory
defendants tacitly acquisced in, condoned and/or encouraged the
individual defendants to engage in unconstitutional misconduct,
failure to implement identification procedures, fabricated
evidence, and failure to produce demonstrative evidence to
prove that a crime did occur.

3.      The actions and omissions of JOHN DOE defendants 1 through
20 directly and proximately caused TERRY L. WILLIAMS to suffer
all of the injuries and damages set forth above.

                          COUNT VI:
              VIOLATION OF 42 U.S.C. § 1983 BY
                 DEFENDANT CITY OF BOSTON

1.      All of the foregoing is hereby incorporated by reference
and realleged as if set forth herein.

2.      The CITY OF BOSTON, by and through its policymaker,
Police Chief, created and maintained a custom, policy and/or
practice of failing to train and supervise Boston Police Officers,
District 14 Brighton Police Officers, including the individual
named and unnamed defendants in this case, in without limitation:

        A.    Failure to implement constitutional identification
              procedure;

        B.    The constitutional obligation to disclose to
              prosecutors evidence that demonstrates that a
              crime/or crimes have occurred.

        C.    Ensuring that they did not fabricate evidence or
              falsify report inculpating suspect.

                              25

1.    The CITY OF BOSTON'S failure to train and supervise
Boston Police adequately in these constitutional duties
directly and proximately caused TERRY L. WILLIAMS' constitutional
deprivations, including his false arrest, malicious prosecution,
unfair trial, wrongful conviction, loss of freedom while
on parole, and the other grievous permant injuries and damages
set forth above.

STATE LAW CAUSE OF ACTION

COUNT VII:
MALICIOUS PROSECUTION
AGAINST THE INDIVIDUAL POLICE DEFENDANTS AND JOHN DOES

1.    All of the forgoing is hereby incorporated by reference
and realleged as if set forth herein.

2.    Defendant Police Officers JOHN BOYLE and WILLIAM KELLEY
acting with malice and without probable cause, initiated the
criminal proceedings against TERRY L. WILLIAMS by filing a false
police incident report, notified Mr. WILLIAMS' parole officer
without legal justification for doing so, filed false
complaint with the court clerk to activate the criminal proceedings
against TERRY L. WILLIAMS.

3.    Defendant police officer WILLIAM KELLEY made a deliberate
and intentional effort to save the malicious prosecution case
from being dismissed against TERRY L. WILLIAMS, BY appearing
in court on July 31,2002, to give false testimony at the Motion
Hearing for admittance for spontaneous utterances, which was
allowed. He testified falsely at the Motion Hearing for the
reason to ensure that the malicious prosecution case against

26

TERRY L. WILLIAMS went to trial and not be dismissed, on

July 31,2002. Because, defendant police officers JOHN BOYLE

and WILLIAM KELLEY had plan to testify falsely at Mr. WILLIAMS'

forced trial which was held on March 5,2003 and on March 6,2003.

4.      Defendant police officers' conduct caused TERRY L.

WILLIAMS opportunity to have had all charges dismissed against

on July 31,2002, unfair trial, wrongful conviction, and

imprisonment, lose freedom on parole status and appear as a

three time offender, all of which events and circumstances caused

TERRY L. WILLIAMS to suffer the physical, emotional and

pecuniary damages set forth above.

### COUNT VIII:
### NEGLIGENCE

1.  AGAINST THE CITY OF BOSTON FOR DEFENDANTS JOHN BOYLE and

WILLIAM KELLEY AND JOHN DOE SUPERVISORS      Plaintiff hereby

incorprates all of the foregoing as if set forth herein and

further alleges as follows:

2.      Defendant JOHN BOYLE and WILLIAM KELLEY owed TERRY L.

WILLIAMS a duty of care, and breached that duty by falling to

thoroughly investigate the two 911 calls, properly. For example,

there were two 911 calls made from two different apartment located

at 1431 Commonwealth Avenue and defendant police officer JOHN

BOYLE only investigated one of the 911 calls in that apartment

building, on 1431 Commonwealth Avenue before arresting Mr.

WILLIAMS.

3.      Defendant JOHN BOYLE and WILLIAM KELLEY owed TERRY L.

WILLIAMS  a duty of care for defendant police officers to

27

treat him as fairly as any other suspect, by using proper
identification procedures, which defendants did not use in
MR. WILLIAMS' case. Defendant police officer breached their
duty to being the alleged victim down to the police station
so that the alleged victim could file a proper complaint and
for them to take a written statement/or tape recorded statement
from the alleged victim for the purpose of establishing probable
cause to arrest and to initiate the criminal process against
Mr. WILLIAMS, which the defendants did not do.

4.    Defendant police officers JOHN BOYLE and WILLIAM KELLEY
owed TERRY L. WILLIAMS duty of care by having the alleged
victim identify Mr. WILLIAMS to make sure that no mistakes
were bein made in the arrest process, this duty of care was
breached against Mr. WILLIAMS, by defendants JOHN BOYLE and
WILLIAM KELLEY. Although with due care and proper diligence, the
defendants would have discovered that Mr. WILLIAMS did not
commit a crime at all.

5.    The JOHN DOES supervisory defendants shared this duty of
care, which they breached by failing to supervise defendants
JOHN BOYLE and WILLIAM KELLEY adequately during their investigation.

6.    Uner the Massachusetts Tort Claim Act, CITY OF BOSTON
must answer for its employees' breach of duty.

7.    As a direct and proximate result of defedants' breach,
TERRY L. WILLIAMS was arrested, prosecuted, convicted, and
imprisoned, loss his parole for a crime or crimes he did not
commit. In addition, defedants' negligent investigation caused
TERRY L. WILLIAMS to suffer all of the other injuries and

damages set forth above.

## CLAIMS FOR DAMAGES

1.     Defendants' actions deprived TERRY L. WILLIAMS OF his civil rights under the First, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution, and the laws of the Commonwealth of Massachusetts.

2.     The defendants' unlawful, intentional, willful, purposeful, deliberately indifferent, reckless, bad faith and/or malicious acts, misdeeds and omissions caused TERRY L. WILLIAMS to be falsely arrested, maliciously prosecuted, unfairly tried, wrongfully convicted and wrongful imprisonment.

3.     The unlawful, intentional, willful, purposeful, deliberately indifferent, reckless, bad faith and/or malicious acts, misdeeds and omissions of the defendants caused TERRY L. WILLIAMS the following injuries and damages: personal injuries; pain and suffering; sever mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; loss of parole, humiliation, indignities and embarrassment; degradation; injury to reputation; and restrictions on all forms of personal freedom including but not limited to diet, personal contact, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel,  enjoyment, and expression, for which TERRY L. WILLIAMS is entitled monetary relief.

4.    All the alleged acts, misdeeds and omissions by the defedants described herein for which liability is claimed were done intentionally, willfully, purposefully, knowingly, unlawfully, maliciously, wantonly, recklessly, and/or with bad faith, in the scope of their employment, and meets all of the stardards for imposition of punitive damages.

5.    WHEREFORE, PLAINTIFF TERRY L. WILLIAMS prays as follows:

6.    A.    That the Court enter judgment in favor of plaintiff and against the defendants on all Counts of the COMPLAINT;

B.    That the Court award compensatory damages to plaintiff and against the defendants, individually and jointly in an amount to be determined at trial;

C.    That the Court award puntive damages to plaintiff and against defendants individually and jointly in an amount to be determined at trial, in order that such award will deter similar proscribed conduct by defendants in the future;

D.    That the Court would order that the assault and battery charge and related charges be expunged from all police records and from the records of all law enforcement agencies;

E.    That the Court award plaintiff recovery of cost concerning this action, including reasonable attorneys' fees.

F.    That the Court grant plaintiff any such other relief to which he may be entitle.

JURY TRIAL DEMAND

1.    A jury trial is hereby demanded.

Respectfully submitted,

DATE: January 21,2010

Terry L. Williams pro se

2 Clark Street/Box 43

Norfolk Ma. 02056