UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TERRY L. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 10-10131-PBS |
| CITY OF BOSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT**

August 7, 2012

DEIN, U.S.M.J.

# I.  INTRODUCTION

This case arises out of the arrest, prosecution and conviction of the plaintiff, Terry

L. Williams ("Williams"), for an assault and battery which Williams claims he did not

commit.  Following the reversal of his conviction and the dismissal of the criminal

charges against him, Williams brought this action pro se against the defendants, the City

of Boston ("City"), Boston police officers John Boyle ("Boyle") and William Kelley

("Kelley") (collectively, the "Officers"), and various unnamed supervisors in the Boston

Police Department, for alleged violations of his constitutional and state law rights.

Williams later withdrew his federal civil rights claims against the City, and his claims

against the Officers for improper investigation and false arrest were dismissed.  His

remaining claims against the named defendants consist of federal civil rights claims

against Boyle and Kelley for malicious prosecution (Count II), fabrication of evidence (Count III), and conspiracy (Count IV), a state law claim against the Officers for malicious prosecution (Count VII), and a state law claim of negligence against the City (Count VIII).[1]

The matter is presently before the court on the "City of Boston's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Docket No. 82) and on "Officer John Boyle and Officer William Kelley's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Docket No. 85). By their motions, the defendants are seeking summary judgment, pursuant to Fed. R. Civ. P. 56, on all of Williams' remaining claims against them.

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Boyle's and Kelley's motion for summary judgment be ALLOWED IN PART and DENIED IN PART WITHOUT PREJUDICE. Specifically, this court recommends that the Officers' motion be allowed with respect to Williams' Fourth Amendment claim for malicious prosecution, but otherwise denied. This court also recommends, for the reasons described below and in this court's Memorandum of Decision and Order on Defendants' Motion to Strike and for Sanctions issued on this

---

[1] Williams' claims against the John Doe defendants include claims for violations of his federal civil rights under 42 U.S.C. § 1983 (Counts I, II and V), and his claim for malicious prosecution under state law (Count VII).

date, that the denial be without prejudice to renewal after the defendants are given the opportunity to depose Bobbie Jean Horsley.

With respect to Williams' remaining claim against the City, this court finds that there are no disputed issues of fact, and that the City is entitled to judgment as a matter of law. Therefore, and for all the reasons described below, this court recommends that the City's motion for summary judgment be ALLOWED.

## II.  STATEMENT OF FACTS[2]

### Scope of the Record

In connection with their motions for summary judgment, the defendants have moved to strike the affidavit of Bobbie Jean Horsley ("Horsley Affidavit") as untimely, since it was first identified and submitted by Williams as an exhibit in support of his oppositions to the motions. Horsley was the alleged victim of the assault and battery for which Williams was convicted and which ultimately gave rise to the plaintiff's claims in this action. Her Affidavit is critical to Williams' ability to dispute Boyle's and Kelley's arguments in support of their motion for summary judgment, and to withstand judgment as a matter of law on at least some of his claims against the Officers.[3]

---

[2]  The facts are derived from: (1) the "Defendants' City of Boston, Officer John Boyle, and Officer William Kelley, Statement of Facts Pursuant to Local Rule 56.1" ("DF") and the exhibits attached thereto ("Def. Ex. __") (Docket Nos. 84 and 87); (2) "Plaintiff's Terry L. Williams Statement of Facts Pursuant to Local Rule 56.1" ("PF") (Docket No. 96); and the exhibits attached to the plaintiff's Exhibit List ("Pl. Ex. __") (Docket No. 97).

[3]  For example, but without limitation, Horsley's Affidavit provides the only evidence supporting Williams' claim that Boyle fabricated a false police report or that the Officers maliciously prosecuted him by initiating criminal charges against him, without probable cause, for

For the reasons set forth in detail in this court's Memorandum of Decision and Order on the Defendants' Motion to Strike and for Sanctions issued on this date, this court has declined to strike the Affidavit or to recommend that this action be dismissed as a sanction for Williams' failure to disclose the Horsley Affidavit earlier. However, this court does recommend to the District Judge to whom this case is assigned that some sanction is appropriate and that the defendants be given the opportunity to take Horsley's deposition. This court further recommends that in the event Horsley cannot be located or otherwise fails to appear and testify, her Affidavit be stricken from the record. Finally, this court recommends that the defendants be given an opportunity to file a renewed motion for summary judgment, regardless of whether Horsley has been deposed.

At the present time, the Horsley Affidavit remains part of the record on summary judgment. Therefore, it has been incorporated into the following facts, which are undisputed unless otherwise indicated.

## **Williams' Arrest**

The events leading up to Williams' arrest took place on February 9, 2002. At that time, Williams was visiting his sister, Debra Hoyt ("Hoyt"), in her home at 1431 Commonwealth Avenue, Apartment 6, in Brighton, Massachusetts. (DF ¶ 1; Def. Ex. B at 10). Bobby Jean Horsley, a friend of Hoyt's who lived in Florida, also was visiting Hoyt in her apartment. (See Pl. Ex. B ¶ 16; Pl. Ex. F ¶ 2). It is undisputed that while

an assault and battery and an assault and battery with a dangerous weapon.

they were visiting Hoyt, Williams and Horsley got into a heated argument. (DF ¶¶ 2-3). However, as described below, the parties dispute whether Williams attacked Horsley and assaulted her with a knife during the course of the altercation.

In the very early hours of February 9, 2002, the Boston Police Department received two 911 calls from 1431 Commonwealth Avenue in Brighton. (DF ¶¶ 6, 8; Def. Ex. C). During the first call, which occurred at approximately 12:57 a.m., the caller reported that a male and female couple were fighting in one of the apartments in the building. (DF ¶ 6; Def. Ex. C). Boyle and Kelley were dispatched to the scene in response to that call. (Def. Ex. D ¶ 5; Def. Ex. E ¶ 5). The second 911 call, which came from Apartment 6, occurred at about 1:02 a.m. (DF ¶ 8; Def. Ex. C). At that time, the caller stated that her friend's brother was outside the door, drunk, and was kicking the door. (DF ¶ 9). Boyle was subsequently notified of the call from Apartment 6. (Def. Ex. D ¶ 11).

Boyle and Kelley arrived at 1431 Commonwealth Avenue, and found that the glass on the front door of the building had been broken. (DF ¶ 10). As they walked into the building, they found Williams standing inside the front hallway. (Def. Ex. D ¶ 7; Def. Ex. E ¶ 7). Both of the Officers noticed that Williams had a bump on his forehead and cuts on his hands and head. (DF ¶ 12). Boyle then asked the plaintiff what had happened, and the plaintiff responded that nothing had happened. (DF ¶¶ 13-14). However, after Boyle told Williams that the Officers were responding to a call about a man and woman fighting, Williams admitted that he had been in an argument with a

woman upstairs, and that he was responsible for breaking the glass on the front door of the building. (Def. Ex. B at 18-19; DF ¶¶ 15-16). He also told the officers that the woman with whom he had argued had hit him with a vase, but that he did not wish to press charges. (Def. Ex. B at 18-19).

During the course of the parties' conversation, Boyle asked Williams whether he was on probation or parole. (Pl. Ex. O ¶ 4). The plaintiff responded that he was on parole, and Boyle asked Williams to reveal the nature of his offense. (Id. ¶¶ 4-5). Williams told the Officers that he was on parole from a second degree murder sentence. (Id. ¶ 5). However, neither of the Officers asked Williams to identify himself by name. (PF ¶ 5).

Following the parties' exchange, Boyle headed upstairs to conduct an investigation while Kelley remained in the front hallway with the plaintiff. (DF ¶¶ 17-18). It is undisputed that Boyle went to Apartment 6, where he spoke briefly with Bobbie Jean Horsley. (DF ¶ 18; Pl. Ex. O ¶ 6). However, the substance of that conversation is in dispute. According to Boyle, Horsley told him that she had gotten into a fight with her boyfriend, whom she identified as the plaintiff, and that Williams had tried to stop her from leaving the apartment by grabbing her around the neck and throwing her to the ground. (Def. Ex. D ¶¶ 14-15). Additionally, according to Boyle, Horsley stated that during the fight, Williams grabbed a kitchen knife and stabbed her in the hand. (Id. ¶ 16). Boyle claims that he observed red marks on Horsley's neck and a cut on her hand, which were consistent with the victim's story. (Id. ¶ 17).

Williams was not present in the apartment during Boyle's investigation, and was unable to hear Horsley's statements to the Officer. (DF ¶ 23). Nevertheless, he claims that he did not commit any crime, and that Boyle's description of Horsley's statements is false. (Compl. (Docket No. 1) at p.8). Williams' claim is supported by an Affidavit from Horsley in which the alleged victim denies that Williams ever touched her or attacked her with a knife, and disputes Boyle's account of his conversation with her. (See Pl. Ex. F ¶¶ 8, 10-16). According to Horsley, the first time she met Williams was on February 8, 2002, when the plaintiff was visiting his sister. (Pl. Ex. F ¶¶ 4-5). She denies that she ever had a dating relationship with the plaintiff or that he was in the apartment to visit her. (Id.). Furthermore, although Horsley admits that she made a 911 call to report that Williams was kicking the door of his sister's apartment, she expressly denies ever having told any police officer that Williams had a fight with her, or that he tried to prevent her from leaving the apartment, or that he stabbed her in the hand with a kitchen knife. (Id. ¶¶ 6, 11, 12). Rather, according to Horsley, she informed the investigating officer that she and Williams had been involved in an argument, but that everything was all right. (Id. ¶ 10). Thus, Horsley's description of her conversation with Boyle directly contradicts the Officer's version of events.

Although the substance of Boyle's conversation with Horsley is in dispute, it is undisputed that while Boyle was upstairs interviewing Horsley, two other officers from the Boston Police Department, James Chin and Waiman Lee, arrived at 1431 Commonwealth Avenue and joined Williams and Kelley in the downstairs hallway. (See Def. Ex.

B at 52; PF ¶¶ 10-11). Boyle subsequently returned downstairs and instructed Kelley to place Williams under arrest. (DF ¶ 24; PF ¶ 10). When Williams asked why he was being arrested, Boyle replied that "[t]he lady upstairs said you stabbed her." (Def. Ex. B at 60). Williams was then placed under arrest for assault and battery, assault and battery with a dangerous weapon, and breaking and entering a building in the nighttime with intent to commit a felony. (Def. Ex D ¶ 18). Horsley was never asked to identify Williams, and Williams did not give the Officers his name at any time before he was arrested. (Pl. Ex. O ¶ 7).

### Events Following Williams' Arrest

Williams and the defendant Officers offer differing accounts of the events that took place immediately following Williams' arrest. According to Boyle and Kelley, Officers Lee and Chin took Williams to the police station for booking while the defendants returned to Apartment 6 to speak to the alleged victim. (DF ¶¶ 26-27). The Officers claim that while they were in the apartment, Horsley told them the same story that she had told Boyle earlier. (Id. at ¶¶ 30-31). Thus, according to the Officers, Horsley stated that she and Williams had gotten into a fight, and that Williams grabbed her by the neck in order to stop her from leaving the apartment. (DF ¶ 30; Def. Ex. D ¶ 20; Def. Ex. E ¶ 17-18). She also stated that Williams stabbed her in the hand with a kitchen knife. (DF ¶ 31). Kelley claims that he was able to observe red marks on Horsley's neck and a cut on her hand. (Def. Ex. E ¶¶ 20-21). Moreover, the Officers claim that Horsley showed them the knife that had been used in the incident, and that

they were able to take it as evidence.  (DF ¶ 32).  According to Boyle, the knife was taken out of the sink, where Horsley had put it when she was trying to clean the kitchen following the fight.  (Pl. Ex. 1 at p. 2).

The plaintiff disputes the Officers' version of what took place following his arrest. According to Williams, Boyle and Kelley left the apartment building and returned to the police station immediately after placing Williams in the custody of Officers Chin and Lee.  (PF ¶¶ 11; Pl. Ex. A ¶ 14; Pl. Ex. C ¶ 16; Pl. Ex. O ¶ 8).[4]  Consequently, when Williams arrived at the police station with Officers Chin and Lee, the defendants were already there and Williams was returned to their custody for booking.  (PF ¶¶ 15-16; Pl. Ex. A ¶ 17; Pl. Ex. C ¶ 20; Pl. Ex. O ¶ 9).  Williams contends that Kelley could not have spoken with Horsley after the arrest because the Officers had already left the scene.  (PF ¶ 19).  Therefore, he asserts that Kelley's account of his discussion with Horsley had to have been fabricated.  (See PF ¶¶ 18-19).

Horsley's testimony supports the plaintiff's assertion that the second interview never happened and that Kelley's account of his conversation with the victim is untrue. Specifically, in her Affidavit, Horsley states that she spoke to only one police officer on February 9, 2002.  (Pl. Ex. F ¶ 9).  Moreover, as described above, Horsley denies that Williams fought with her or that any assault took place.

---

[4]  Plaintiff's Exhibits A and C include both the Plaintiff's Request for Admissions to each of the defendant Officers, and the Responses thereto.

Following Williams' arrest, Boyle completed a police report in which he described

the circumstances leading up to the arrest as follows:

> About 12:57 AM, Saturday, 2/09/2002 Officers Boyle and Kelley, K101A, responded to a radio call for a man and women fighting at 1431 Commonwealth Ave. On arrival Officers observed a broken glass door. When they entered the building the Officers were met by the suspect. The suspect had blood on his hands, blood and scratches on his head and face and also a large bump on his forehead. When Officers asked the suspect what happened he stated "nothins goin on, but ya I broke that glass". Officer Boyle then went up stairs to apartment 6 and spoke with the victim who stated that she and her friend were trying to leave the apartment and the suspect wouldn't let them, then the suspect threw the victim down into the kitchen and while they were fighting the suspect stabbed the victim in the hand with a kitchen knife. The victim then told Officer Boyle that the suspect left the apartment after the fight for a few minutes but tried to return. The victim and the witness refused to let him back in. The suspect was then placed under arrest for assault and battery with a dangerous weapon to wit: knife, assault and battery (209A), breaking and entering nighttime and transported to D-14, by Officers Chin and Lee, K102A ....

(Pl. Ex. 1 at pp. 1-2). Williams claims that there was no evidence that he had committed

a crime, and that Boyle fabricated the description of the incident in his police report.

(Compl. at pp. 9-11).

It is undisputed that following Williams' arrest on February 9, 2002, Boyle

notified Williams' parole officer that the plaintiff had been arrested for stabbing a female

in the hand with a knife. (Pl. Ex. B ¶ 14). As a result, a detainer was placed on Williams

for violating the terms of his parole. (See Pl. Ex. 1; Pl. Ex. J).

## State Court Proceedings

On February 11, 2002, Boyle and Kelley filed an application for a criminal complaint against Williams, which they claim was based upon their observations and conversations with Horsley on the night of the arrest. (DF ¶ 35; Pl. Ex. V). Subsequently, Williams was arraigned in Brighton District Court on charges of breaking and entering at nighttime with intent to commit a felony, assault and battery by means of a dangerous weapon, and assault and battery. (PF ¶¶ 26-27). Neither the Officers nor the alleged victim were present at Williams' arraignment. (PF ¶¶ 28-29).

On March 27, 2002, the Commonwealth filed a "Motion *in Limine* to Admit Spontaneous Utterances" in connection with the pending criminal case against Williams. (Pl. Ex. M). Therein, the Commonwealth argued that Horsley and a civilian witness had made "spontaneous utterances" to Boyle and Kelley shortly after the Officers arrived at 1431 Commonwealth Avenue in response to a report of domestic violence. (Id.). The Commonwealth also requested that the trial court admit the testimony of the Officers as to the substance of those statements pursuant to the excited utterance exception to the hearsay rule. (Id.).

A hearing on the Commonwealth's motion in limine took place in West Roxbury District Court on July 31, 2002. (Pl. Ex. H). During the hearing, the Commonwealth conceded that its ability to present a case against Williams was dependent upon the admissibility of the Officers' testimony regarding the statements that allegedly were made to them by the victim. (Id. at I-3). The court allowed counsel to conduct a voir dire of Kelley, who was the only witness to testify at the hearing. (Id. at I-3-I-20). In his

testimony, Kelley described the circumstances surrounding the plaintiff's arrest on February 9, 2002, including the substance of the interview that he and Boyle claim they conducted with Horsley after Williams had been arrested. (Id. at I-4 -I-20). Based on Kelley's testimony, the trial court allowed the Commonwealth's motion in limine. (Id. at I-22-I-26). Williams claims that Kelley's testimony was false, and that the criminal proceedings continued against him without probable cause as a result of Kelley's conduct. (PF ¶¶ 38-40).

The criminal trial against Williams took place on March 5 and 6, 2003. (See Pl. Exs. N & Q). Horsley did not appear at trial. (DF ¶ 37). However, pursuant to the trial court's order on the Commonwealth's motion in limine, both Boyle and Kelley were allowed to testify as to the substance of the statements that allegedly had been made to them by Horsley. See Commonwealth v. Williams, 65 Mass. App. Ct. 9, 10-11, 836 N.E. 2d 335, 337 (2005). At the conclusion of the trial, a verdict was rendered in Williams' favor on the charges of breaking and entering at nighttime and assault and battery with a dangerous weapon. (Pl. Ex. U at 2). However, Williams was found guilty of assault and battery. (Id.). He was sentenced to two and a half years at the South Bay House of Correction, with 383 days credit for time served. (Pl. Ex. U at p.1).

Williams subsequently appealed his assault and battery conviction to the Massachusetts Appeals Court, asserting, among other things, that the trial judge had abused his discretion and violated Williams' rights under the confrontation clause of the Sixth Amendment by admitting Horsley's statements as excited utterances.

Commonwealth v. Williams, 65 Mass. App. Ct. 9, 836 N.E. 2d 335, 336 (2005). The appeal was argued on March 14, 2005, and on October 28, 2005, the Appeals Court issued a decision reversing Williams' conviction and setting aside the jury's verdict against him. Id. at 14, 836 N.E. 2d at 339. Specifically, the Appeals Court found that the admission of Horsley's statements, "without the opportunity for cross-examination of the declarant, violated the confrontation clause of the Sixth Amendment to the United States Constitution[,]" and that the admission of the statements through the Officers' testimony "created a substantial risk of a miscarriage of justice." Id. at 11-13, 836 N.E. 2d at 338-39. Because the Appeals Court concluded that reversal was warranted based on Williams' Sixth Amendment argument, it declined to address his remaining claims on appeal. Id. at 13-14, 836 N.E. 2d at 339.

Despite Williams' success in obtaining a reversal of his conviction, the Appeals Court's decision was not issued until after the expiration of his sentence. (See Pl. Ex. U at p. 1). Therefore, Williams served all of the time required under his sentence at the South Bay House of Correction. Furthermore, due to the parole detainer that had been lodged against him following his arrest on February 9, 2002, Williams claims that he was not released back into the community following the completion of his sentence on the assault and battery conviction, but rather remained incarcerated pending a parole revocation hearing by the Massachusetts Parole Board. (Compl. at pp. 13-14, 16).

Additional factual details relevant to this court's analysis are described below where appropriate.

## III. ANALYSIS – BOYLE'S AND KELLEY'S MOTION FOR SUMMARY JUDGMENT

The plaintiff's remaining claims against Boyle and Kelley consist of federal civil rights claims for malicious prosecution in violation of the Fourth Amendment (Count II), fabrication of evidence in violation of the Fourteenth Amendment (Count III), and conspiracy (Count IV), as well as a state law claim for malicious prosecution (Count VII). The Officers have moved for summary judgment on each of these claims. For the reasons that follow, this court finds that the defendants are entitled to qualified immunity on Williams' Fourth Amendment claim against them for malicious prosecution, but that disputed issues of material fact preclude summary judgment for the Officers on the remaining claims.

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See Vineberg, 548 F.3d at 56.  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

### B.      Counts II and VII: Claims for Malicious Prosecution

In Counts II and VII of his Complaint, Williams claims that Boyle and Kelley acted with malice by initiating and pursuing criminal proceedings against him without probable cause, in violation of his federal constitutional and state law rights.  The Officers argue that they are entitled to summary judgment on these claims because the undisputed facts show that there was probable cause to arrest Williams for each of the

crimes with which he was charged. As detailed below, the defendants have not shown that they are entitled to judgment as a matter of law on this basis. Nevertheless, because the right not to be maliciously prosecuted under the Fourth Amendment was not clearly established in 2002 when the challenged conduct took place, the Officers are entitled to qualified immunity on Williams' Fourth Amendment claim, leaving only his state law claim for malicious prosecution.

## **Malicious Prosecution**

To prevail on a claim for malicious prosecution, the plaintiff must prove "that 'criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor.'" Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st Cir. 1999) (quoting Landrigan v. City of Warwick, 628 F.2d 736, 745 n.6 (1st Cir. 1980)). "Thus, a § 1983 malicious prosecution action based upon a deprivation of Fourth Amendment rights requires a showing of the absence of probable cause to initiate proceedings, as does the parallel state tort claim of malicious prosecution." Id. at 89 (internal citation omitted).

Boyle and Kelley argue that Williams cannot prevail on his claims for malicious prosecution because Horsley's statements to them – that the Plaintiff had stabbed her and grabbed her around the neck – gave them probable cause to arrest the plaintiff for assault and battery and for assault and battery with a dangerous weapon. (Def. Mem. (Docket No. 86) at 4). However, in light of Horsley's Affidavit, in which she denies making the statements attributed to her, this court must conclude that there are material facts in

-16-

dispute as to whether the defendants had probable cause to initiate criminal proceedings against Williams for these alleged crimes.[5]

The defendants argue further that even if the Officers did not have probable cause for the assault and battery charges, they nevertheless had probable cause to arrest Williams for breaking and entering a building with intent to commit a felony at nighttime, and that, therefore, they are entitled to summary judgment in their favor on Williams' claims for malicious prosecution.  (Def. Mem. at 4).  However, the defendants are confusing the tort of malicious prosecution with that of false arrest.  While probable cause to support any one of multiple offenses charged may defeat a claim of false arrest,

> a cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which ... is likely to have placed an additional burden on the plaintiff.

Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007).  Thus, "[w]here the suspect is prosecuted for multiple offenses, a claim of malicious prosecution can succeed for one or more of the offenses, even if it fails (because it is determined that the prosecutor had probable cause to prosecute) for the other offenses."  Goddard, 629 F. Supp. 2d at 130.

---

[5]  Although the Officers focus on whether they had probable cause to arrest Williams, in cases such as this, in which the plaintiff was subjected to a warrantless arrest and is challenging the initiation of criminal proceedings against him, "the proper inquiry ... is whether the defendants had probable cause to initiate the criminal charge against [the plaintiff], not whether they had probable cause to arrest him."  Meehan, 167 F.3d at 89.  Where there is no warrant constituting legal process, "[t]he act of malicious prosecution begins with the submission, under oath, of a criminal complaint."  Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D. Mass. 2009).  Accordingly, the relevant question is whether the Officers had probable to file the application for a criminal complaint against Williams.

As described above, when the facts are viewed in the plaintiff's favor they establish that there was no probable cause to initiate criminal proceedings against Williams on the two assault and battery charges. Therefore, even assuming the defendant Officers had probable cause to pursue criminal proceedings against Williams on the breaking and entering charge, that is not sufficient to defeat the plaintiff's federal and state law claims against the Officers for malicious prosecution.

## **Qualified Immunity**

The Officers contend that even if a constitutional violation occurred, they are nevertheless entitled to qualified immunity with respect to Williams' Fourth Amendment claim for malicious prosecution. (See Def. Mem. at 7-8). "Under the doctrine of qualified immunity, police officers are protected 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)) (additional citation omitted). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231, 129 S.Ct. at 815 (quotations and citations omitted).

The First Circuit employs the following analysis to evaluate whether a particular defendant is entitled to qualified immunity:

> Following *Pearson* we employ a two-prong analysis in determining whether a defendant is entitled to qualified immunity. We ask (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. The second prong, in turn, has two parts. We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right. The salient question is whether the state of the law at the time would have given a reasonably competent officer clear notice that what he was doing was unconstitutional.

Mlodzinski, 648 F.3d at 32-33 (internal citations and quotations omitted).

Boyle and Kelley contend that no reasonable officer in the defendants' situation would have understood that his conduct constituted a violation of Williams' constitutional rights. (Def. Mem. at 7-8). At least as recently as 2010, the First Circuit has explicitly held that "[i]t remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth Amendment and section 1983[.]" Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010). Accordingly, in 2002, at the time of the events giving rise to Williams' claims, it was not clearly established that there was a constitutional right to remain free from malicious prosecution. Therefore, the Officers are entitled to qualified immunity with respect to Williams' Fourth Amendment malicious prosecution claim. See Rodriguez-Mateo v. Fuentes-Agostini, 66 Fed. Appx. 212, 213-14, 2003 WL 21243479, at *1 (1st Cir. May 28, 2003) (unpub. op.) (holding that

uncertainty as to whether the Constitution supports the assertion of a Section 1983 claim for malicious prosecution under the Fourth Amendment entitles state actors to qualified immunity).  Only Williams' state law claim for malicious prosecution should remain.

### C.      Count III: Claim for Fabrication of Evidence

In Count III, Williams claims that the defendants violated his civil rights under Section 1983 by fabricating inculpatory evidence against him in violation of his right to due process.  In particular, Williams alleges that Boyle intentionally completed a false police incident report that misrepresented the events that took place on February 9, 2002 and was used as evidence against Williams at his criminal trial.  (Compl. at pp. 20-21). He further alleges that Kelley perjured himself at the hearing on the prosecution's motion in limine for the admission of excited utterances by testifying about a conversation he had with Horsley and observations he made of her when, in fact, he never went upstairs to Apartment 6 to conduct an investigation.  (Id. at pp. 21-22).  The defendants argue that they are entitled to summary judgment on this claim because there is no evidence to support Williams' allegations and because the Officers are entitled to qualified immunity. For the reasons that follow, this court recommends that the Officers' motion be denied with respect to Count III.

### Fabrication of Inculpatory Evidence

The record establishes that the material facts relating to whether the Officers fabricated inculpatory evidence against Williams are in dispute.  Most significantly, Williams has presented evidence from Horsley which directly contradicts the statements

attributed to her in Boyle's police report and in Kelley's testimony at the hearing on the motion in limine, and which undermines the Officers' assertions that any assault and battery took place. (See Pl. Ex. F). Furthermore, the plaintiff has presented evidence based on his own knowledge to support his contention that Boyle and Kelley left the apartment building immediately after placing Williams under arrest, and that therefore, Kelley's testimony at the motion hearing that he went back upstairs to the apartment was false. (See Pl. Ex. A ¶ 14; Pl. Ex. C ¶ 16; Pl. Ex. O ¶¶ 8, 11). This evidence is sufficient to support Williams' claim for fabrication of evidence and to defeat summary judgment for the Officers on Count III of Williams' Complaint.

## **Qualified Immunity**

The Officers argue that in any event, they are entitled to qualified immunity because no reasonable officer would have known that the alleged fabrication of evidence violated Williams' constitutional rights. (See Def. Mem. at 7-8). However, the constitutional right not to be framed by law enforcement officers has long been established. Limone v. Condon, 372 F.3d 39, 45 (1st Cir. 2004). As Justice Stewart stated when writing for a unanimous Supreme Court in 1967,

> More than 30 years ago this Court held that the Fourteenth Amend-
> ment cannot tolerate a state criminal conviction obtained by the
> knowing use of false evidence. There has been no deviation from
> that established principle.

Id. at 45-46 (quoting Miller v. Pate, 386 U.S. 1, 7, 87 S. Ct. 785, 788, 17 L. Ed. 2d 690 (1967)). Since, when the facts in the record on summary judgment are viewed in favor of

the plaintiff, they are sufficient to establish a violation of a clearly established constitutional right about which a reasonable officer would have been aware, the Officers have not shown that they are entitled to qualified immunity with respect to Williams' fabrication of evidence claim.

### D.    Count IV: Claim for Conspiracy Under Section 1983

Williams' final claim against Boyle and Kelley, which is asserted in Count IV of the Complaint, is that the Officers conspired to deprive the plaintiff of his constitutional rights in violation of Section 1983. The Officers argue that they are entitled to summary judgment on this Count because there are no facts to support Williams' allegation that the defendants came to an agreement to violate the plaintiff's constitutional rights, or that the Officers acted knowingly or willingly in furtherance of that agreement. (Def. Mem. at 7). This court disagrees, and recommends that the motion be denied with respect to this claim.

A civil rights conspiracy consists of "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quotations and citations omitted). Therefore, in order to prevail on a conspiracy claim, the plaintiff must present evidence showing "(1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

causing damages." <u>Lumpkin v. Lucey</u>, Civil Action No. 09-11921-RGS, 2010 WL 1794400, at *5 (D. Mass. May 4, 2010) (slip op.) (quotations and citations omitted). However, "the agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof[.]" <u>Earle v. Benoit</u>, 850 F.2d 836, 843 (1st Cir. 1988). Therefore, "[c]ircumstantial evidence is sufficient to prove a conspiracy." <u>Santiago v. Fenton</u>, 891 F.2d 373, 389 (1st Cir. 1989).

Because Boyle and Kelley are entitled to qualified immunity on Williams' Fourth Amendment malicious prosecution claim, the plaintiff is foreclosed from pursuing a Section 1983 claim for conspiracy to maliciously prosecute him. <u>See</u> <u>Santiago</u>, 891 F.2d at 389 (finding that plaintiff could not sustain a claim against police officer for conspiracy to maliciously prosecute him where officer was entitled to qualified immunity on the malicious prosecution claim). However, a jury still could find that the Officers engaged in a conspiracy to frame Williams for a crime he did not commit. As detailed above, Williams has presented evidence showing that the Officers fabricated false evidence against him. The record also contains sufficient circumstantial evidence to show that the Officers acted in concert and in furtherance of an agreement to deprive Williams of his constitutional rights. In particular, the plaintiff has presented facts showing that Boyle and Kelley both responded to the 911 call from 1431 Commonwealth Avenue, jointly participated in an investigation at the apartment building, provided substantially identical accounts of Horsley's statements, and together pursued criminal charges against the plaintiff. Therefore, the defendants are not entitled to summary

judgment on Count IV of the Complaint.  See Santiago, 891 F.2d at 389 (reversing directed verdict in favor of defendant police officer on claim for civil rights conspiracy where reasonable jury could have found that police officers fabricated basis for arresting plaintiff, and therefore engaged in a conspiracy to arrest plaintiff illegally).

## IV.   ANALYSIS – CITY OF BOSTON'S MOTION FOR SUMMARY JUDGMENT

The City is also seeking summary judgment on the remaining claim asserted against it in Count VIII of Williams' Complaint.  By that claim, Williams is seeking to hold the City liable, pursuant to the MTCA, for the alleged negligence of its employees in investigating the circumstances leading to the plaintiff's arrest, prosecution and conviction.  In particular, Williams claims that the City should be held liable for the negligence of Boyle and Kelley in investigating the 911 calls and in arresting and initiating criminal process against the plaintiff for a crime he did not commit without first obtaining a statement, written complaint, or identification from the victim.  He also claims that the City should be held liable for the negligence of the John Doe defendants in failing to provide adequate supervision of Boyle and Kelley during their investigation. (Compl. at pp. 27-28).  The City contends that it is entitled to summary judgment because the defendant Officers acted intentionally with respect to their investigation and subsequent prosecution of the plaintiff, and under Section 10(c) of the MTCA, municipal employers are immune from liability for the intentional acts of their employees.  It further contends that to the extent there are any facts to suggest that the Officers' actions were

negligent, it would still be entitled to immunity from liability pursuant to Section 10(h) of the MTCA. (City Mem. (Docket No. 83) at 2-4). Because this court finds that the City is entitled to immunity under Section 10(c) of the statute, this court recommends that the City's motion be allowed.

"The MTCA abrogates the doctrine of sovereign immunity and allows a suit against a public entity, but only to the extent provided in the statute." Titus v. Town of Nantucket, 840 F. Supp. 2d 404, 411 (D. Mass. 2011). Thus, under Section 2 of the MTCA,

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances ....

Mass. Gen. Laws ch. 258, § 2. However, under Section 10(c) of the MTCA, public employers remain immune from "any claim arising out of an intentional tort," including but not limited to, false arrest and malicious prosecution. Mass. Gen. Laws ch. 258, § 10(c). In the instant case, all of the allegedly tortious acts of Boyle and Kelley, including the alleged unlawful arrest and continued prosecution of the plaintiff without probable cause, and the alleged fabrication of evidence against him, amount to intentional torts. See Tvedten v. City of Boston, Civil Action No. 10-11291-GAO, 2012 WL 1077680, at *3 (D. Mass. Mar. 29, 2012) (slip op.) (explaining that conduct such as arrest without probable cause and malicious prosecution constitute intentional acts). Under the MTCA, the City cannot be held liable for such conduct.

Williams' attempt to characterize the police Officers' actions in connection with their investigation as negligent is unsupported by the plaintiff's own evidence. (See Pl. Opp. Mem. (Docket No. 95) at 6-7). When the facts are viewed in Williams' favor, they show that the Officers arrested the plaintiff for an assault and battery which they knew had never happened. They further show that following the arrest, Boyle concocted a false police report of the incident, and that Kelley lied under oath about the alleged victim's statements. Thus, under Williams' version of events, the Officers acted intentionally to frame the plaintiff for a crime he did not commit. Accordingly, any failure to perform a more thorough investigation was not due to any negligence on their part, but was part of a deliberate plan to arrest and prosecute the plaintiff notwithstanding the lack of evidence against him. Pursuant to Section 10(c) of the MTCA, the City is immune from liability for such conduct. See Titus, 840 F. Supp. 2d at 411 (holding that municipality could not be held liable under the MTCA where "all of the facts as alleged by the plaintiff establish that she is challenging intentional acts allegedly done by the police officers").

To the extent Williams is still seeking to hold the City liable for the allegedly negligent conduct of the John Doe defendants in failing to supervise Boyle and Kelley, he has not presented any evidence to support such a claim. Therefore, this court recommends that the City's motion for summary judgment be allowed as to Williams' remaining claim against it for negligence.

## V. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "Officer John Boyle and Officer William Kelley's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Docket No. 85) be ALLOWED IN PART and DENIED IN PART WITHOUT PREJUDICE. Specifically, this court recommends that the Officers' motion be allowed with respect to Williams' Fourth Amendment claim for malicious prosecution, but otherwise denied. This court also recommends, for the reasons described herein and in this court's Memorandum of Decision and Order on Defendants' Motion to Strike and for Sanctions issued on this date, that the denial be without prejudice to renewal after the defendants have had the opportunity to depose Bobbie Jean Horsley.

With respect to the "City of Boston's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Docket No. 82), this court recommends that the motion be ALLOWED.[6]

_____

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

_/ s / Judith Gail Dein_
Judith Gail Dein
U.S. Magistrate Judge