UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TERRY L. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 10-10131-PBS |
| CITY OF BOSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGEMENT

March 14, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This case arises out of the arrest, prosecution and conviction of the plaintiff, Terry L. Williams ("Williams"), for the assault and battery of Bobbie Jean Horsley ("Horsley") on February 9, 2002.  Williams claims that no such incident occurred, and that he was unlawfully framed for a crime which he did not commit.  Following the reversal of his conviction and the dismissal of the criminal charges against him, Williams brought this action pro se against the defendants, the City of Boston ("City"), Boston police officers John Boyle ("Boyle") and William Kelley ("Kelley") (collectively, the "Officers"), and 20 unnamed individuals from the Boston Police Department, for alleged violations of his constitutional and state law rights.

On December 30, 2011, the City and the Officers filed motions for summary judgment on each of the claims then remaining against them in the litigation, and on February 17, 2012, Williams filed oppositions to those motions.  Among the exhibits Williams submitted in support of his oppositions was an affidavit from Horsley ("Horsley Affidavit") in which she contradicted much of the evidence submitted by Boyle and Kelley in support of their motion for summary judgment.  Because the Horsley Affidavit had not been produced to the defendants in connection with discovery or at any other time prior to Williams' filing of his opposition papers, the defendants moved for an order striking the Affidavit as untimely and dismissing the action with prejudice as a sanction for Williams' failure to disclose it earlier.

On August 7, 2012, this court issued a Memorandum of Decision and Order on Defendants' Motion to Strike and for Sanctions in which this court declined to strike the Horsley Affidavit or to recommend that the case be dismissed, but found that a sanction was appropriate for Williams' untimely disclosure of critical evidence.  In particular, this court determined that the defendants should be given an opportunity to take Horsley's deposition, and that if Horsley could not be located or otherwise failed to appear and testify, her Affidavit should be stricken from the record.  Furthermore, this court concluded that the defendants should be given an opportunity to file a renewed motion for summary judgment, regardless of whether or not Horsley was deposed.

On August 7, 2012, this court also issued a Report and Recommendation on Defendants' Motions for Summary Judgment (Docket No. 106) ("R&R").  Therein, this

court recommended to the District Judge to whom this case is assigned that the City's motion for summary judgment be allowed, and that Boyle's and Kelley's motion for summary judgment be allowed in part and denied in part.  This court further recommended that the Officers have an opportunity to depose Horsley or have her testimony stricken from the record in accordance with its ruling on the defendants' motion to strike, and that the denial of the Officers' summary judgment motion be without prejudice to renewal after the defendants had taken or attempted to take Horsley's deposition.  The R&R was adopted by the District Judge on September 21, 2012.  As a result, the only claims remaining against the named parties in the litigation are Williams' claims against Boyle and Kelley for fabrication of evidence (Count III) and conspiracy (Count IV) under 42 U.S.C. § 1983 ("Section 1983"), and Williams' state law claim against the Officers for malicious prosecution (Count VII).

Williams' claims against the 20 unnamed, "John Doe" defendants include claims for violations of his federal civil rights under Section 1983 (Counts I, II and V), and a claim for malicious prosecution under state law (Count VII).  However, there is no indication that Williams has attempted to name or serve any those individuals at any time during the course of the litigation.

The matter is presently before the court on "John Boyle and William Kelley's Renewed Motion for Summary Judgment" (Docket No. 119).  By their motion, the Officers contend that the Horsley Affidavit must be stricken from the record because the witness failed to appear for her scheduled deposition.  They also contend that absent

Horsley's Affidavit, there are no disputed issues of material fact, and they are entitled to judgment as a matter of law on each of Williams' remaining claims against them. Finally, the Officers argue that any effort by Williams to name or serve the John Doe defendants at this late stage in the case would unfairly prejudice the Officers' defense. Accordingly, they request that the court dismiss all of those defendants from the litigation.

As detailed below, this court agrees that the Horsley Affidavit must be stricken, and that as a result, the Officers are entitled to summary judgment on Williams' claims for conspiracy and malicious prosecution, as well as on his claim against Boyle for fabrication of evidence. This court also agrees that it is appropriate to dismiss the John Doe defendants at this stage in the proceedings. However, this court finds that material facts remain in dispute with respect to Williams' fabrication of evidence claim against defendant Kelley. Accordingly, and for all the reasons described herein, this court recommends to the District Judge to whom this case is assigned that the Officers' renewed motion for summary judgment be ALLOWED IN PART and DENIED IN PART. Specifically, this court recommends that the motion be denied with respect to Count III against Kelley, but otherwise allowed. This court also recommends that all of the John Doe defendants be dismissed from the case without prejudice.

## II. **STATEMENT OF FACTS**[1]

---

[1] The facts are derived from: (1) the Statement of Undisputed Material Facts ("DF") set forth in the "Memorandum of Law in Support of John Boyle and William Kelley's Renewed

**Scope of the Record**

The defendants argue, as an initial matter, that the Horsley Affidavit should be stricken from the record because Horsley failed to appear for her scheduled deposition. (Def. Mem. (Docket No. 120) at 7-8).  This court finds that the defendants have made a significant attempt to procure Horsley's testimony, and that her failure to comply with a deposition subpoena warrants that her Affidavit be stricken.

In connection with their renewed motion for summary judgment, the defendants have submitted evidence showing that shortly after learning about the existence of the Horsley Affidavit in February 2012, the defendants engaged in an effort to locate Horsley and obtain her deposition testimony.  (See Def. Ex. 5 ¶¶ 3-5).  After attempts to reach Horsley by telephone failed, the defendants retained a private investigator to search for Horsley at her last known address.  (Id. ¶¶ 6-7).  However, that strategy too proved unsuccessful.  (Id. ¶ 7).

Following the issuance of this court's ruling on the defendants' initial summary judgment motions, the defendants' investigator renewed his search for Horsley, and was ultimately able to locate her at a friend's apartment in Boston where she was staying.  (Id.

---

Motion for Summary Judgment" (Docket No. 120), and the exhibits attached thereto ("Def. Ex. __"); (2) the Affidavit of Terry L. Williams ("Williams Aff.") attached to the "Plaintiff's Court Ordered Memorandum of Law" (Docket No. 115), and the exhibits attached thereto ("Pl. Ex. __"); (3) the Plaintiff's Request for Admissions directed to William Kelley (Docket No. 115-2) ("Kelley RFAs"); (4) the Plaintiff's Request for Admissions directed to John Boyle (Docket No. 115-3) ("Boyle RFAs"); (5) the Affidavit of William Kelley (Docket No. 115-4) ("Kelley Aff."); and (6) the Affidavit of Defendant John Boyle (Docket No. 115-5) ("Boyle Aff.").

¶¶ 9, 11).  Nevertheless, the investigator's attempts to serve Horsley with a deposition subpoena in hand failed because no one would answer the door of the apartment.  (Id. ¶ 13).  Accordingly, the defendants arranged for a constable to complete service on Horsley by leaving the subpoena at Horsley's last known address, i.e., her friend's apartment in Boston.  (Id. ¶ 14).  The deposition was scheduled to take place on November 23, 2012 at Boston's City Hall.  (Id. ¶ 15).  However, Horsley failed to appear for her deposition or to call defense counsel to explain why she would not be appearing.  (Id. ¶¶ 16-17).  Because Horsley's last known telephone number is not in service, defense counsel was unable to contact her.  (Id. ¶ 18).

The record demonstrates that the defendants have taken reasonable steps to conduct Horsley's deposition, and that their inability to do so has been caused solely by Horsley's evasive conduct.  In accordance with the court's prior orders in this case, the Horsley Affidavit is hereby stricken from the record.  Her prior sworn statements have not been considered in connection with the following description of the material facts, which are undisputed unless otherwise indicated.

## The Plaintiff's Arrest

The events surrounding Williams' arrest took place on February 9, 2002.  At that time, both Williams and Horsley were visiting Williams' sister at her apartment located at 1431 Commonwealth Avenue, Apartment 6, in Brighton, Massachusetts.  (DF ¶ 1; Def. Ex. 1 at 10-11).  It is undisputed that at some point while they were in the apartment, Williams and Horsley got into an argument.  (DF ¶ 2).  As described below, Horsley

subsequently informed the police that Williams attacked her with a kitchen knife during the course of their altercation.

In the very early hours of February 9, 2002, the Boston Police Department received two separate 911 calls from 1431 Commonwealth Avenue in Brighton.  (Id. ¶¶ 3, 5).  During the first call, which occurred at about 12:57 a.m., the caller reported that a male and female couple were fighting in one of the apartments in the building.  (Id. ¶ 3; Def. Ex. 2).  Boyle and Kelley were dispatched to the scene in response to that call.  (DF ¶ 4; Def. Ex. 3 ¶ 5).  During the second call, which came from Apartment 6 at about 1:02 a.m., the caller stated that her friend's brother was outside the door of the apartment, drunk, and was kicking on the door.  (See DF ¶  5; Def. Ex. 2).  Boyle was later notified of the second call from Apartment 6.  (Def. Ex. 3 ¶ 11).

When Boyle and Kelley arrived at 1431 Commonwealth Avenue, they noticed that the glass on the front door had been shattered.  (Def. Ex. 3 ¶ 6; Def. Ex. 4 ¶ 6).  They also found Williams standing in the front hallway of the building.  (Def. Ex. 3 ¶ 7; Def. Ex. 4 ¶ 7).  Both of the Officers observed that Williams had a bump on his forehead and cuts on his hands and head.  (DF ¶ 7).  One of the Officers asked Williams what was going on, and the defendant replied that nothing was going on.  (Def. Ex. 3 ¶ 9; Def. Ex. 4 ¶ 9).  However, Williams subsequently told the Officers that he had been responsible for breaking the glass on the front door, and that he had been involved in an argument with a woman in Apartment 6, but had not put his hands on her.  (DF ¶ 8; Pl. Ex. 3 ¶¶ 1-

2).  He also told the Officers that the woman with whom he had argued had hit him with a vase, but that he was not interested in pressing charges against her.  (Pl. Ex. 3 ¶ 3).

During the parties' conversation, Boyle asked Williams whether he was on probation or parole, and the plaintiff responded that he was on parole.  (Id. ¶ 4).  Boyle then asked Williams about the nature of his offense.  (Id. ¶ 5).  Williams told Boyle that he was on parole from a second degree murder sentence.  (Id.).

Following the parties' exchange, Boyle went upstairs to conduct an investigation while Kelley remained in the front hallway of the building with the plaintiff.  (Id. ¶ 6; DF ¶¶ 9-10).  It is undisputed that Boyle went to Apartment 6, where he spoke briefly with Horsley.  (DF ¶ 10; Pl. Ex. 3 ¶ 6).  It is also undisputed that during the conversation, Horsley told Boyle that she had gotten into a fight with her boyfriend, whom she identified as Williams, and that Williams had tried to prevent her from leaving the apartment by grabbing her around the neck and throwing her to the ground.  (Def. Ex. 3 ¶¶ 14-15).  Additionally, Horsley told Boyle that during the fight, Williams had grabbed a kitchen knife and stabbed her in the hand.  (Id. ¶ 16).  Boyle observed red marks on Horsley's neck and a cut on her hand, which were consistent with the victim's statements.  (Id. ¶ 17).

At some point while Boyle was upstairs interviewing Horsley, two additional officers from the Boston Police Department, James Chin and Waiman Lee, arrived at 1431 Commonwealth Avenue and joined Williams and Kelley in the downstairs hallway.  (See Pl. Ex. 7 ¶¶ 2-3).  Boyle subsequently returned downstairs and instructed Kelley to

place Williams under arrest.  (<u>Id.</u>; DF ¶ 16).  When Williams asked why he was being arrested, Boyle replied that "[t]he lady upstairs said you stabbed her."  (Def. Ex. 1 at 59-60; <u>see</u> <u>also</u> DF ¶ 17).  Williams was then placed under arrest for assault and battery, assault and battery with a dangerous weapon, and breaking and entering a building in the nighttime with intent to commit a felony.  (Def. Ex. 3 ¶ 18).  However, Horsley was never brought downstairs and asked to identify the plaintiff.  (Pl. Ex. 3 ¶ 7).

### Events Following Williams' Arrest

The events that took place immediately following Williams' arrest remain in dispute.  According to the defendants, Officers Lee and Chin took Williams to the police station for booking while the defendants returned to Apartment 6 to conduct a further investigation.  (DF ¶¶ 18-19).  The Officers claim that while they were in the apartment, Horsley told them the same story that she had told Boyle when she spoke to him earlier.  (Def. Ex. 3 ¶ 20; Def. Ex. 4 ¶ 17-19).  Thus, according to the Officers' version of events, Horsley told both Boyle and Kelley that she and Williams had gotten into a fight, and that Williams had grabbed her by the neck in order to stop her from leaving the apartment.  (Def. Ex. 3 ¶ 20; Def. Ex. 4 ¶¶ 17-18).  She also stated that during the fight, Williams had stabbed her in the hand with a knife.  (<u>See</u> Def. Ex. 4 ¶¶ 19, 22).  Kelley claims that he observed red marks on Horsley's neck and a cut on her hand.  (<u>Id.</u> ¶¶ 20-21).  Additionally, the Officers claim that Horsley showed them the knife that had been used in the incident, and that they took it from the apartment to use as evidence.  (DF ¶ 24).

9

The plaintiff disputes the Officers' account of what occurred following his arrest, in particular that they had any conversation with Horsley after his arrest.  According to Williams, Boyle and Kelley immediately left the apartment building and returned to the police station while Williams remained in the hallway, in the custody of Officers Lee and Chin.  (Pl. Ex. 3 ¶ 8; Pl. Ex. 7 ¶¶ 5-6; see also Boyle RFAs ¶ 14; Kelley RFAs ¶ 16).[2] Subsequently, Officers Lee and Chin placed Williams in a police cruiser and transported him to the police station.  (Pl. Ex. 7 ¶¶ 8-9).  When the plaintiff arrived at the station, the defendants were already there and Williams was returned to their custody for booking. (Id. ¶¶ 10-12; Pl. Ex. 3 ¶ 9).  Based on these facts, Williams insists that Kelley could not have spoken with Horsley after the arrest.  (Pl. Ex. 3 ¶ 11).  Therefore, Williams asserts that Kelley's account of his discussion with Horsley must have been fabricated.  (See Pl. Opp. Mem. (Docket No. 115) at 4).

Following Williams' arrest, Boyle completed a police report in which he described the circumstances leading up to the plaintiff's arrest as follows:

> About 12:57 AM, Saturday, 2/09/2002 Officers Boyle and Kelley, K101A, responded to a radio call for a man and women fighting at 1431 Commonwealth Ave.  On arrival Officers observed a broken glass door.  When they entered the building the Officers were met by the suspect.  The suspect had blood on his hands, blood and scratches on his head and face and also a large bump on his fore-head.  When Officers asked the suspect what happened he stated "nothins goin on, but ya I broke that glass".  Officer Boyle then went up stairs to apartment 6 and spoke with the victim who stated that

---

[2] Kelley's and Boyle's responses to the Plaintiff's Request for Admissions are attached to Williams' Requests.

> she and her friend were trying to leave the apartment and the suspect
> wouldn't let them, then the suspect threw the victim down into the
> kitchen and while they were fighting the suspect stabbed the victim
> in the hand with a kitchen knife.  The victim then told Officer Boyle
> that the suspect left the apartment after the fight for a few minutes
> but tried to return.  The victim and the witness refused to let him
> back in.  The suspect was then placed under arrest for assault and
> battery with a dangerous weapon to wit: knife, assault and battery
> (209A), breaking and entering nighttime and transported to D-14, by
> Officers Chin and Lee, K102A....

(Pl. Ex. 5).  Williams claims that there was no evidence that he had committed any crime,

and that Boyle's description of the incident in his police report was false.  (Compl.

(Docket No. 1) at pp. 9-11).

Following the plaintiff's arrest on February 9, 2002, Boyle notified Williams'

parole officer that the plaintiff had been arrested for stabbing a female in the hand with a

knife.  (R&R at 11).  Consequently, a detainer was placed on Williams for violating the

terms of his parole.  (Id. at 10).

### State Court Proceedings

Based upon his conversation with Horsley and his observation of her injuries,

Boyle filed an application for a criminal complaint against Williams.  (DF ¶ 27; Def. Ex.

3 ¶ 22).  Thereafter, Williams was arraigned on charges of breaking and entering at

nighttime with intent to commit a felony, assault and battery by means of a dangerous

weapon, and assault and battery.  (R&R at 11).

On March 27, 2002, the Commonwealth filed a "Motion *in Limine* to Admit

Spontaneous Utterances" in connection with the pending criminal case against Williams.

(Id.).  Therein, the Commonwealth argued that Horsley had made "spontaneous utterances" to Boyle and Kelley shortly after the Officers arrived at 1431 Commonwealth Avenue in response to a report of domestic violence.  (Id.).  It also requested that the trial court allow the Officers to testify as to the substance of those statements pursuant to the excited utterance exception to the hearsay rule.  (Id.).

A hearing on the Commonwealth's motion in limine took place in the West Roxbury District Court on July 31, 2002.  (Pl. Ex. 6).  During the hearing, the prosecutor conceded that the Commonwealth's ability to prosecute its case against Williams was dependent upon the admissibility of the Officers' testimony regarding Horsley's statements.  (Id. at I-3).  In particular, the prosecutor informed the court that "since I only have a police officer, my ability to even present a case would depend on your ruling on the admissibility of statements made by the victim."  (Id.).  The court then allowed counsel to conduct a voir dire of Kelley, who was the only witness available to testify at the hearing.  (Id. at I-3 to I-20).

During his testimony before the court, Kelley described the circumstances surrounding Williams' arrest on February 9, 2002, including the substance of the discussion that he and Boyle claim they had with Horsley after the plaintiff was placed under arrest.  (Id. I-4 to I-20).  Based on Kelley's testimony, the trial court allowed the motion in limine, which enabled the Commonwealth's case against Williams to continue to trial.  (See id. at I-22 to I-26).  Williams claims that Kelley's testimony was false, and

that he was subjected to malicious prosecution as a result of Kelley's conduct.  (Compl. at p. 21).

The criminal case against Williams proceeded to trial before a jury.  See Commonwealth v. Williams, 65 Mass. App. Ct. 9, 9, 836 N.E.2d 335, 336 (2005). Horsley was not called as a witness.  Id. at 11 n.1, 836 N.E.2d at 337 n.1.  Instead, pursuant to the trial court's order on the Commonwealth's motion in limine, both Boyle and Kelley were allowed to testify regarding the substance of the statements that Horsley had allegedly made to them.  See id. at 10-11, 836 N.E.2d at 337.  At the conclusion of the trial, the jury returned a verdict in favor of Williams on the charges of breaking and entering at nighttime and assault and battery with a dangerous weapon, but found him guilty of assault and battery.  (R&R at 12).  Accordingly, Williams was sentenced to two and a half years at the South Bay House of Correction, with 383 days credit for time served.  (Id.).

Williams subsequently appealed his assault and battery conviction to the Massachusetts Appeals Court claiming, among other things, that the trial judge had abused his discretion and violated Williams' rights under the confrontation clause of the Sixth Amendment by admitting Horsley's statements into evidence as excited utterances. Williams, 65 Mass. App. Ct. at 9, 836 N.E.2d at 336.  On October 28, 2005, the Appeals Court issued a decision reversing Williams' conviction and setting aside the jury verdict against him.  Id. at 9, 14, 836 N.E.2d at 335, 339.  Specifically, the Appeals Court found that the admission of Horsley's statements, "without the opportunity for cross-

examination of the declarant, violated the confrontation clause of the Sixth Amendment

to the United States Constitution[,]" and that the admission of the statements through the

Officers' testimony "created a substantial risk of a miscarriage of justice." Id. at 12-13,

836 N.E.2d at 338-39.  Because the court concluded that reversal was warranted on this

basis, it declined to address Williams' remaining claims on appeal.  Id. at 13-14, 836

N.E.2d at 339.

Despite Williams' success on appeal, the Appeals Court's decision was not issued

until after the expiration of the plaintiff's sentence.  (R&R at 13).  Therefore, Williams

served all of the time required under his sentence at the South Bay House of Correction.

Moreover, as a result of the parole detainer that had been lodged against Williams after

his arrest on February 9, 2002, the plaintiff claims that following the completion of his

sentence on the assault and battery conviction, he remained incarcerated pending a parole

revocation hearing by the Massachusetts Parole Board.  (Compl. at pp. 13-14, 16).

Additional factual details relevant to this court's analysis are described below

where appropriate.

## III.  ANALYSIS

### A.   Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the

discovery and disclosure materials on file, and any affidavits, "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor

of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting

Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it

possesses the capacity to sway the outcome of the litigation under the applicable law."

Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine

issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st

Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only

by providing properly supported evidence of disputed material facts that would require

trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511

U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).  Accordingly, "the nonmoving party

'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific

facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  The

court must view the record in the light most favorable to the non-moving party and

indulge all reasonable inferences in that party's favor.  See Vineberg, 548 F.3d at 56.  "If,

after viewing the record in the non-moving party's favor, the Court determines that no

genuine issue of material fact exists and the moving party is entitled to judgment as a

matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F.

Supp. 2d 134, 143 (D. Mass. 2006).

**B.**      **Count III: Claim for Fabrication of Evidence**

In Count III of his complaint, Williams claims that Boyle and Kelley should be held liable under Section 1983 because they fabricated inculpatory evidence against him, in violation of his Fourteenth Amendment right to due process.  Specifically, Williams alleges that Boyle intentionally created a false police incident report in which the defendant misrepresented the events that took place on February 9, 2002, and which was used as evidence against Williams at his criminal trial.  (Compl. at pp. 20-21).  He also alleges that Kelley provided false testimony at the hearing on the Commonwealth's motion in limine for the admission of excited utterances by describing a conversation that he had with Horsley, and observations that he made of her, when in fact Kelley never went upstairs to Apartment 6 to conduct an investigation.  (Id. at 21-22).  For the reasons that follow, this court finds that Williams has presented no facts to support his claim that Boyle created a false police incident report or that any of the information contained therein was fabricated.  However, because the record contains evidence supporting the claim that Kelley's testimony at the motion hearing was untruthful and wrongfully caused the criminal case against Williams to proceed to trial, this court recommends that the motion for summary judgment be denied with respect to the fabrication of evidence claim against Kelley.

## Evidence of a Constitutional Violation

With respect to Williams' claim against Boyle, there are no facts to support the allegations that the defendant fabricated a false police incident report.  The record on summary judgment demonstrates that Boyle's report was entirely consistent with the

statements that Horsley made to him during his investigation, when she described how Williams had grabbed her by the neck, thrown her to the ground, and stabbed her in the hand with a kitchen knife during the course of her fight with the plaintiff on February 9, 2002.  (Compare Def. Ex. 3 ¶¶ 12-16 with Pl. Ex. 5).  Indeed, Williams expressly concedes that "the circumstances that took place during Officer John Boyle's interview at apartment six before he had arrested the Plaintiff are not material facts being disputed by the Plaintiff[.]"  (Pl. Opp. Mem. at 10).  Therefore, he cannot establish that Boyle was lying when he recorded Horsley's description of events in the police report, and he cannot withstand Boyle's motion for summary judgment with respect to Count III.

On the other hand, the record establishes that the material facts relating to whether Kelley fabricated inculpatory evidence against Williams during the hearing on the Commonwealth's motion in limine are in dispute.  In particular, the plaintiff has submitted evidence showing that Boyle and Kelley left the apartment building at 1431 Commonwealth Avenue immediately after placing Williams under arrest, and that Kelley could not have gone upstairs and spoken with Horsley at that time.  (See Pl. Ex. 3 ¶ 8; Pl. Ex. 7 ¶¶ 5-6, 8-9; Kelley RFAs ¶ 16; Boyle RFAs ¶ 14).  Thus, when that facts are viewed in the light most favorable to Williams, as this court must do on a motion for summary judgment, they support Williams' claim that Kelley was lying when he testified about the substance of his discussion with Horsley immediately following Williams' arrest on February 9, 2002.  Therefore, the plaintiff has presented sufficient evidence to defeat Kelley's motion for summary judgment on Count III of the complaint.

The defendants nevertheless assert that "Plaintiff has presented no evidence to support a claim that Boyle or Kelley fabricated any **material** evidence that would vitiate probable cause and, as such, Plaintiff cannot demonstrate that a constitutional violation has occurred." (Def. Mem. at 9). This argument is not persuasive. As an initial matter, the defendants' argument reflects a misunderstanding of Williams' claim. By his claim for fabrication of evidence, the plaintiff is not alleging that the defendants lacked probable cause to arrest him or to file a criminal complaint against him. Instead, he is claiming that the defendants violated his right to due process by concocting false evidence, and that their conduct resulted in his criminal conviction for a crime which Williams claims he did not commit. "[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process . . . ." Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir. 2004) (internal citation omitted). Therefore, evidence that Kelley enabled the criminal matter to proceed against Williams by testifying falsely about his conversation with the victim is sufficient to support Williams' assertion that Kelley violated his Fourteenth Amendment right to due process.

To the extent the defendants are suggesting that Kelley's testimony was immaterial, this court is unpersuaded. During the hearing before the trial court on the Commonwealth's motion in limine, the prosecutor conceded that his ability to present a case against Williams was entirely dependent upon the admissibility of the Officers'

18

testimony regarding the statements that Horsley allegedly made to them.  (Pl. Ex. 6 at I-3).  Because Kelley was the only witness available to provide testimony regarding those statements at the hearing, his testimony was critical to the survival of the prosecution's case.  (See id. at I-3 to I-20).  In fact, the record establishes that the trial court allowed the motion in limine on the basis of Kelley's testimony.  (See id. at I-22 to I-26).  Therefore, any suggestion that Kelley's testimony was not material is belied by the record before this court.

Finally, the defendants point out that during his deposition, Williams admitted that he did not know whether Kelley spoke to Horsley at some point after Williams was arrested.  (Def. Mem. at 10; see also Def. Ex. 1 at 97).  However, that evidence is insufficient to warrant summary judgment in Kelley's favor.  The only evidence that has been presented regarding a conversation between Kelley and Horsley concerns the alleged conversation that occurred in Apartment 6 immediately after Williams was arrested and placed in the custody of Officers Chin and Lee.  Because there are facts to support Williams' assertion that no such conversation could have taken place at that time because Kelley and Boyle had already left the apartment building, Williams' deposition testimony does not undermine his claim that a constitutional violation occurred.

## Qualified Immunity

The Officers contend that even if Williams can demonstrate a violation of his constitutional rights, they are entitled to qualified immunity with respect to Williams'

claim for fabrication of evidence.  (See Def. Mem. at 18-20).  This court finds that the record on summary judgment does not support a claim of qualified immunity.

"Under the doctrine of qualified immunity, police officers are protected 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)) (additional citation omitted).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson, 555 U.S. at 231, 129 S. Ct. at 815 (quotations and citations omitted).

The First Circuit employs the following analysis to evaluate whether a particular defendant is entitled to qualified immunity:

> Following *Pearson*, we employ a two-prong analysis in determining whether a defendant is entitled to qualified immunity.  We ask (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. The second prong, in turn, has two parts.  We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of

> the case, a reasonable officer would have understood that his
> conduct violated the right.  The salient question is whether the state
> of the law at the time would have given a reasonably competent
> officer clear notice that what he was doing was unconstitutional.

Mlodzinski, 648 F.3d at 32-33 (internal citations and quotations omitted).

The defendants argue that qualified immunity shields Kelley from any liability for his conduct because "[n]o reasonable officer would consider arresting the Plaintiff under these circumstances to be an unlawful endeavor[,]" and because "the presence of probable cause was merely questionable at the time of the arrest."  (Def. Mem. at 19 (quotations and citation omitted)).  Again, however, the defendants' argument reflects a misunderstanding of Williams' claims.  Although his complaint originally included a claim for false arrest, that claim was dismissed at the outset of the litigation and is no longer part of the case.  See Williams v. City of Boston, 771 F. Supp. 2d 190, 200-01 (D. Mass. 2011) (dismissing false arrest claim on statute of limitations grounds).  Consequently, the defendants' argument does not address the issues pending before the court.

In any event, this court finds that Kelley is not entitled to qualified immunity with respect to Williams' fabrication of evidence claim.  The constitutional right not to be framed by law enforcement officers has long been established.  See Limone, 372 F.3d at 45.  As Justice Stewart stated when writing for a unanimous Supreme Court in 1967:

> More than 30 years ago this Court held that the Fourteenth
> Amendment cannot tolerate a state criminal conviction obtained by
> the knowing use of false evidence.  There has been no deviation
> from that established principle.

21

Id. at 45-46 (quoting Miller v. Pate, 386 U.S. 1, 7, 87 S. Ct. 785, 788, 17 L. Ed. 2d 690

(1967)).  Because there can be no doubt that a reasonable officer in Kelley's position

would have understood that lying under oath about a defendant's criminal activity would

deprive the defendant of his constitutional rights, the Officers have not shown that Kelley

is entitled to qualified immunity with respect to Williams' fabrication of evidence claim.

### C.    Count IV: Claim for Conspiracy Under Section 1983

The Officers also have moved for summary judgment on Williams' claim, asserted

in Count IV of his complaint, that the defendants conspired to deprive him of his

constitutional rights in violation of Section 1983.  For the reasons that follow, this court

finds that the defendants are entitled to judgment as a matter of law on this claim.

A civil rights conspiracy consists of "a combination of two or more persons acting

in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the

principal element of which is an agreement between the parties to inflict a wrong against

or injury upon another, and an overt act that results in damages."  Estate of Bennett v.

Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quotations and citations omitted).

Therefore, in order to prevail on a conspiracy claim under Section 1983, the plaintiff

must present evidence showing "(1) an agreement between two or more state actors . . .

(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages."  Lumpkin v. Lucey, Civil Action No. 09-

11921-RGS, 2010 WL 1794400, at *5 (D. Mass. May 4, 2010) (slip op.) (quotations and

citations omitted).  Although a conspiracy to inflict an unconstitutional injury is often "'a

22

matter of inference,' summary judgment may still be appropriate on a conspiracy claim where the nonmoving party rests merely on conclusory allegations." Estate of Bennett, 548 F.3d at 178.

Here, the plaintiff has not presented any evidence of an agreement to violate Williams' constitutional rights. Although there is evidence that Kelley inflicted an unconstitutional injury upon Williams by testifying falsely at the hearing on the motion in limine, there is no evidence that Boyle participated in or provided support for the allegedly unlawful conduct. As described above, the record demonstrates that Boyle was not even present at the motion hearing, and the police report he generated was accurate. Moreover, there are no facts indicating that he encouraged Kelley to engage in perjury or otherwise assisted him in depriving the plaintiff of his constitutional rights. Therefore, this court recommends that the defendants' motion be allowed with respect to Count IV of the complaint.

### D.    Count VII: Claim for Malicious Prosecution

In Count VII of his complaint, Williams asserts that Boyle and Kelley engaged in malicious prosecution, in violation of his rights under state law, by maliciously initiating and pursuing criminal proceedings against him without probable cause. The Officers argue that they are entitled to summary judgment on this claim because the undisputed facts show that there was probable cause to support the initiation of criminal proceedings against Williams. (See Def. Mem. at 13-15). This court agrees that the Officers are entitled to summary judgment on this claim.

To prevail on a claim for malicious prosecution under Massachusetts law, the plaintiff must establish that "(1) [he was] damaged because the defendants commenced the criminal prosecution without probable cause; (2) that they did so with malice or improper purpose, and (3) that the criminal action terminated in [his] favor." Afreedi v. Bennett, 517 F. Supp. 2d 521, 540 (D. Mass. 2007). "Probable cause exists where 'the facts and circumstances within [the police officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." Id. at 533 (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987)) (alterations in original; additional citation omitted). Furthermore, "[u]nder the so-called 'fellow-officer' rule, law enforcement officials cooperating in an investigation are entitled to rely upon one another's knowledge of facts when forming the conclusion that a suspect has committed or is committing a crime." Id.

Here, there is no genuine dispute that the Officers had probable cause to initiate criminal proceedings against Williams for assault and battery, assault and battery by means of a dangerous weapon, and breaking and entering at nighttime with intent to commit a felony. Significantly, the undisputed facts show that when the Officers arrived at 1431 Commonwealth Avenue in response to a domestic violence call, they observed Williams standing in the front hallway with a bump on his forehead and cuts on his hands and head. (DF ¶¶ 6-7). Upon questioning, Williams admitted to breaking the glass on the building's front door, and to having an argument with the woman in Apartment 6. (Id.

¶ 8; Pl. Ex. 3 ¶¶ 1-2). Additionally, there is no dispute that during her conversation with

Boyle, Horsley accused Williams of assaulting her and stabbing her in the hand with a

knife. (Def. Ex. 3 ¶¶ 14-16). Thus, under the circumstances presented, there can be no

serious doubt as to the reasonableness of the Officers' belief that Williams had committed

the crimes for which he was charged. Williams' state law claim for malicious

prosecution must fail.

### E. Request to Dismiss John Does 1-20

As part of their motion for summary judgment, the defendants are seeking

dismissal of the unnamed John Doe defendants on the grounds that any attempt to name

and serve those individuals with process at this late stage in the litigation would prejudice

the Officers' defense. (Def. Mem. at 17-18). This court finds that the plaintiff's failure

to identify and serve any of the John Does since the inception of this litigation in 2010

warrants their dismissal from the litigation without prejudice.

Williams initiated this action more than three years ago by filing his complaint on

January 25, 2010. "Under Fed. R. Civ. P. 4(m), a district court may dismiss a complaint

without prejudice as to a particular defendant if the plaintiff fails to serve that defendant

within 120 days after filing the complaint." Figueroa v. Rivera, 147 F.3d 77, 83 (1st Cir.

1998). The record discloses no attempt since the start of the case to serve any of the 20

John Doe defendants against whom Williams has asserted claims. Therefore, the Officers

have shown that it would be appropriate to dismiss those individuals from the case at this

juncture.

This court also notes that all discovery has been completed and the case is ready for trial.  Therefore, any effort to name and serve additional defendants at this point would be grossly unfair to the Officer defendants.  The court "is not obligated to 'wait indefinitely for [the plaintiff] to take steps to identify and serve . . . unknown defendants.'"  Id.  (quoting Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980)).  Accordingly, this court recommends that John Does 1 through 20 be dismissed without prejudice.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "John Boyle and William Kelley's Renewed Motion for Summary Judgment" (Docket No. 119) be ALLOWED IN PART and DENIED IN PART.  Specifically, this court recommends that the motion be denied with respect to Count III against Officer Kelley, but otherwise allowed.  This court also recommends that all of the John Doe defendants be dismissed from the case without prejudice.[3]

_____

[3]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir.

  / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

1994); <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 4 (1st Cir. 1998).